1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Nicole M. Strickler (IL: 6298459)
Messer Strickler, Ltd.
225 W. Washington, Suite 575
Chicago, IL 60606
312-334-3442 (Phone)
312-334-3473 (Fax)
nstrickler@messerstrickler.com
*Pro Hac Vice*

Attorney for Defendant, Mandarich Law Group, LLP

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ngoc Jenny Tran,<br><br>       Plaintiff,<br><br>   v.<br><br>Velocity Investments, LLC and Mandarich Law Group, LLP,<br><br>       Defendants. | Case No. 18-cv-02257-FMO-SHK<br><br>**DEFENDANT MANDARICH LAW GROUP, LLP'S REPLY MEMORANDUM IN SUPPORT OF MOTION**<br><br>Hearing Date: February 14, 2019<br>Time: 10:00 A.M.<br>Judge: Hon. Fernando M. Olguin |

In her brief, Plaintiff appears to assert two arguments that the Promissory Note is unenforceable against her[1]: (1) there were no witnesses or notaries present when she electronically signed the Borrower Registration Agreement and (2) Prosper could never have served as an attorney in fact because of its duties to WebBank. In doing so, she relies on Cal Prob. Code § 4400 but fails to recognize that the Code is not the exclusive method of granting a power of attorney. Indeed, § 4408 is explicitly clear that nothing in this part affects or limits the use of any other form for a power of attorney. A form that complies with the requirements of "any law other than the provision of this part" may be used instead of the form set forth in Section 4401, and none of the

---

[1] Defendant responds by way of attachment to the Objections to Declarations raised by Plaintiff in the attachment to her Memorandum in Opposition.

provisions of this part apply if the other form is used. *See also* Cal. Prob. Code § 4401 (Deering, Lexis Advance through all 1016 chapters of the 2018 Regular Session and the November 6, 2018 Ballot Measures) (Neither this section, nor the part as a whole, attempts to provide an exclusive method for creating a power of attorney. Other forms may be used and other law employed to create powers of attorney. *See* Section 4408. However, this part should be sufficient for most purposes.). In short, while an individual may certainly grant a power of attorney utilizing Section 4400, it is not the exclusive method of appointing an attorney in fact under California law.

California's adoption of the Uniform Electronic Transactions Act, which governs electronic transactions, provides the necessary guidance on the agreements at issue in this case. California Civil Code 1633.5 ("UETA") applies to "transaction[s] between parties each of which has agreed to conduct the transaction by electronic means." Cal. Civ. Code 1633.5(b). While the Code is careful to carve out certain transactions, such as the creation of wills, appointment of an attorney-in-fact is not included. *See, generally*, Cal. Civ. Code 1633.3. Under the UETA, signatures may not be denied legal effect or enforceability solely because they are in electronic form and contracts may not be denied legal effect or enforceability solely because an electronic record was used in its formation. Cal. Civ. Code 1633.7 (a)-(b). In short, if a law requires a record to be in writing, or a signature, an electronic record satisfies the law. Cal Civ. Code 1633.7 (c)-(d).

The transaction here falls under the UETA because it is not found in the exclusions mentioned in Cal Civ. Code 1633.3 and the parties agreed that it would be conducted by electronic means. *See*, Borrower Registration Agreement ¶23 ("THIS AGREEMENT INCLUDES YOUR EXPRESS CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES. . .YOU EXPRESSLY AGREE THAT EACH OF (A) THIS AGREEMENT AND (B) ANY PROMISSORY NOTE WE SIGN ON YOUR BEHALF IN THE FORM SET FORTH ON THE

DEFENDANT MANDARICH LAW GROUP, LLP'S REPLY
IN SUPPORT OF MOTION                    2

ATTACHED EXHIBIT (A), MAY COMPRISE A 'TRANSFERABLE RECORD' FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AN NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT."). Accordingly, under California law, Plaintiff could effectively grant a power of attorney to Prosper electronically. In fact, a recent district court decision, *Vandehey v. Asset Recovery Sols*., LLC, 2018 U.S. Dist. LEXIS 216457, at *13-15 (E.D. Wis. 2018), efficiently explained the electronic process utilized by Prosper.

> Prosper operates the Prosper Marketplace, which is an online credit platform that offers, among other things, access to unsecured personal loans in the form of a promissory note. All loans originated through the platform are made by WebBank, a Utah-chartered industrial bank. The platform connects applicants who wish to obtain loans with investor members who wish to help fund them. To obtain a loan, an applicant must submit a loan listing through the platform. A listing is a request by the applicant for a loan in the amount and at the interest rate specified in the listing. The applicant must disclose her annual income, occupation and employment status. Prosper also includes in the listing information from the applicant's credit report.
> . . .
> The Borrower Registration Agreement includes the applicant's express consent to electronic transactions and disclosures, as set form in the Terms and Conditions of Use, which are incorporated by reference. The Agreement states in bold letters: "You expressly agree that each of (a) this Agreement and (b) any Promissory Note in the form set forth on the attached Exhibit A that we sign on your behalf, may compromise a 'transferrable record' for all purposes under the Electronic Signatures and Global and National Commerce Act and the Uniform Electronic Transactions Act." Finally, the Borrower Registration Agreement states that if the applicant's listing receives sufficient investor commitments to fund, and the applicant has not withdrawn her listing prior to the expiration of the listing period the applicant "hereby authorizes each of Prosper and PMI to act as your Attorney-in-Fact to execute a Promissory Note in the form set forth on the attached Exhibit A on your behalf in factor of [Web]Bank."

Like the Plaintiffs in *Vandehey*, Plaintiff has submitted a declaration that is full of obfuscation and game-playing. Plaintiff does not specifically contest clicking the box evidencing her consent relative to the Borrower Registration Agreement. Instead, in her declaration, she qualifies that she did not do so in the presence of a witness or notary, and there was no countersignature. *See*, ¶5-7 (D.E. 29-2). This is, of course, not the same thing as attesting that she

1    never clicked the box agreeing to the Borrower Registration Agreement. Further, as explained

2    *supra*, there is no requirement under the UETA that an appointment of an attorney in fact be

3    notarized, witnessed, or countersigned. Plaintiff also attests that she did not sign or receive any

4    Promissory Note, or agreement with WebBank. *Id.* at ¶7-8. Yet, a copy of the Promissory Note

5    was attached as Exhibit A to the Borrower Registration Agreement. Exhibit A begins on the same

6    page as the final page to the Borrower Registration Agreement. So, we know that she did indeed

7    receive a copy of the note she authorized Prosper to sign. Failure to read a contract before agreeing

8    to its terms does not relieve a party of its obligations under the contract. *Nguyen v. Barnes & Noble,*

9    *Inc.*, 763 F.3d 1171 (9th Cir 2014) (citing *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1,

10   11, 534 N.E.2d 824, 537 N.Y.S.2d 787 (1988)).

11

12        Furthermore, by clicking the box evidencing her consent relative to the Borrower

13   Registration Agreement, Plaintiff also consented to Utah law governing the power of attorney

14   provision.  *See*, Borrower Registration Agreement ¶19 (D.E. 25-1 p. 8) ("This Agreement shall be

15   governed by federal law and, to the extent that state law applies, the laws of the State of Utah.").

16   Contrary to Plaintiff's position, California's Probate Code does not go so far as to govern powers

17   of attorney executed in California or by a principal domiciled in California *regardless of choice of*

18   *law provisions*. *See*, Cal. Probate Code § 4052. Indeed, the Law Revision Commission's comments

19   to § 4052 make clear that powers of attorney may specify choice of law. *See* Law Revision

20   Commission Comments (1994) ("The power of attorney may also specify choice of law."").

21   Importantly, Utah did not have any witness or notary requirements for a power of attorney at the

22   time the Borrower Registration Agreement was consented to by Plaintiff (i.e. June 24, 2015).[2]  *See*,

23

24

25

26   [2] The Utah legislature has since adopted the Uniform Power of Attorney Act, but same did not become effective until
     May 10, 2016. *See*, 2016 Ut. HB 74. Thus, Utah Code Ann. § 75-9-105(1) stating that a power of attorney be signed

27   before a notary public was not in effect at the time the Borrower Registration Agreement was entered into.  *See*, Utah
     Code Ann. § 75-9-106 ("A power of attorney executed in this state on or after May 10, 2016, is valid if its execution

28

Utah Code Ann. § 75-5-501 to § 75-5-504 (repealed); *see also*, House Bill 74, 2016 Ut. HB 74 ("This bill: . . . sets requirements for execution and termination . . . ."). Accordingly, the evidence supports a valid consent to a power of attorney in the Borrower Registration Agreement, regardless of the law in California.

Moreover, at the time Plaintiff consented to the Borrower Registration Agreement, no statutory duty existed on the part of an "attorney-in-fact" to act solely in the interest of the principal and to avoid conflicts of interest. *See*, Utah Code Ann. § 75-5-501 to § 75-5-504 (repealed). Accordingly, the claimed conflict on the part of Prosper also cannot operate as a bar to the power of attorney provision in the Borrower Agreement. Moreover, even if a duty of care existed on the part of the agent <u>and</u> California law applied, there is nothing in the California Probate Code that would automatically render a power of attorney invalid as a result of a conflict. *See, generally*, Cal. Probate Code. Rather, the law merely clarifies that any exercise of authority by an "attorney-in-fact" is subject to a duty of care. *See*, Cal. Prob. Code § 4266. Here, that duty of care cannot be said to have been breached as Prosper merely performed a single and specific mechanical act which was explicitly authorized by the Plaintiff with full knowledge of the terms of the Promissory Note to be executed by Prosper on her behalf. As Prosper was properly authorized to sign the Promissory Note on Plaintiff's behalf, Plaintiff is bound by the terms of the Promissory Note.

**Origination Fee:**

Plaintiff's assertions relative to the non-refundable origination fee of $500 ignore the loan documents. The Borrower Registration Agreement provides in Paragraph 6 "Compensation" that if she receives a loan, she must pay WebBank a non-refundable origination fee. That fee, which is

---

complies with § 75-9-105. A power of attorney executed in this state before May 10, 2016 is valid if its execution complied with the law of this state as it existed at the time of execution.").

further detailed in the TILA disclosure attached to her response, was $500.00.  As further stated "this fee will be deducted from your loan proceeds, so the loan proceeds delivered to you or at your direction will be less than the full amount of your issued loan." *See*, Paragraph 6, Borrower Registration Agreement. Thus, there was nothing improper about the deposit of $9,500.00.

**Amount Owed:**

Plaintiff relies entirely on California's usury law prohibiting interest rates of more than ten percent simple interest in concluding that Defendant misstated the amount owed. In doing so, Plaintiff ignores that California's interest laws do not apply to WebBank's contract with Plaintiff because California's usury laws are preempted by virtue of Section 27 of 12 U.S.C. § 1831d. WebBank is a federally regulated bank, federally insured by the Federal Deposit Insurance Corporation, and chartered by the state of Utah. *See*, https://research.fdic.gov/bankfind/ and https://www.utah.gov/dfi/FinancialInstitutions.html; Certificate of Loan Sale, (D.E. 25-5). Congress enacted section 27 as part of section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980, Pub. L. 96-221, 94 Stat. 132 (1980). The purpose of the amendment was to provide federally insured state banks authority to loan money to customers at rates that were competitive with those authorized for national banks under section 85 of the National Bank Act. The statute reads as follows:

(a) Interest rates

In order to prevent discrimination against State-chartered insured depository institutions, including insured savings banks, or insured branches of foreign banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank or insured branch of a foreign bank would be permitted to charge in the absence of this subsection, such State bank or such insured branch of a foreign bank may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where such State bank or such

insured branch of a foreign bank is located or at the rate allowed by the laws of the State, territory, or district where the bank is located, which ever may be greater.

In short, Section 27 expressly preempts the patchwork of individual state restrictions on interest rates and late fees that otherwise preclude a uniform nationwide credit program. By virtue of Section 27, WebBank as a state-chartered bank could lend money at either (1) one percent above the discount rate on ninety-day commercial paper; or (2) the rate allowed by the laws of the state in which the bank is located. WebBank is located in Utah, which has no cap on contractual interest rates. *See*, Utah Code § 70C-7-106.

Interest-rate terms that are valid when a loan is made remain valid after the loan is sold. Sections 85 and 86 of the National Bank Act ("NBA"), 12 U.S.C. §§ 85, 86 and the corresponding and materially identical provision for state-chartered bank, Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d, establish a uniform federal rule of interest-rate and late-fee regulation, preserve the longstanding valid-when-made rule, and completely preempt actions based on state interest-rate laws.

Sections 85 and 86 not only set a maximum interest rate that a national bank may charge (which is the maximum rate allowed by its home State), but they preclude any other State from imposing a lower maximum interest rate on that bank. *See, Beneficial Nat. Bank v. Anderso*n, 539 U.S. 1, 8, 11 (2003) ("Because §§ 85 and 86 provide the exclusive cause of action for such claims, there is, in short, no such thing as a state-law claim of usury against a national bank"; any purported application of state interest-rate law to a national bank's loans is subject to "complete pre-emption."). The same rule of preemption applies to state-law claims about other sorts of fees and loan arrangements that may violate state law. *See, e.g., Smiley v. Citibank (S.D.), N.A*., 517 U.S. 735, 741-42, 744-45 (1996).

Section 27 of the FDIA provides state-chartered banks the same power that Section 85 and

DEFENDANT MANDARICH LAW GROUP, LLP'S REPLY IN SUPPORT OF MOTION   7   CASE NO. 18-cv-02257-FMO-SHK

86 of the NBA provide to national banks to lend nationwide in compliance with the interest-rate laws of their home state, and to sell loans under the valid-when-made rule. To "prevent discrimination against state-chartered" banks Congress created Section 27 of the Federal Deposit Insurance Act to mirror Sections 85 and 86 in every material respect. *See Sawyer v. Bill Me Later, Inc.*, 23 F. Supp. 3d 1359, 1363 (D. Utah 2014). As the *Sawyer* court held, "the same express preemption analysis governing Sections 85 and 86 of the National Bank Act applies to preemption of state usury laws under Section 27 of the FDIA and not only because the two provisions are 'virtually identical' in substance, policy, and internal logic—the same constitutionally prudential considerations direct the court's analysis of Section 27's preemption of the usury and late fee claims brought under [state] law . . . ." *Id.* Accordingly, the loan at issue, made with a state-chartered bank, is not subject to the 10% interest cap cited by Plaintiff.

**Charge-Off Creditor:**

Plaintiff's argument concerning the "Charge-Off Creditor" misses the point. The state court complaint identifies the original creditor, WebBank, accurately. *See*, ¶ 1, State Court Complaint (D.E. 30). The complaint further identifies that the debt as assigned to Prosper Funding, LLC ("Prosper") and then to Velocity Investments, LLC. *Id.* at ¶2-4. The only purported misstatement in the complaint is temporal in nature. According to Plaintiff's Complaint, Prosper purchased Plaintiff's debt after, as opposed to prior to charge-off. Why would it matter to the least sophisticated consumer whether Prosper purchased the debt prior or after charge-off? Plaintiff's response contains no compelling answer to this question.

Instead, Plaintiff points to the Fair Debt Buying Act and concludes that it is a material misrepresentation because the California Legislature required debt buyers to provide this information. For one, this Act is not even applicable to law firms. Regardless, it does not naturally

follow that just because the California Legislature required the charge-off creditor to be identified the Fair Debt Buying Act that it is automatically material for purposes of an entirely different statute. The Fair Debt Buying Act requires a host of information. For example, it requires the last known address of the debtor to be listed as it appears in the charge-off creditor's records. Cal. Civ. Code 1788.52 (5). If hypothetically, the debt buyer did not list the last known address of the debtor but instead listed one prior in error, that would not transform the misrepresentation into a "material". The least sophisticated consumer would still be able to identify her own prior address, even if it was not the very last one. The standard, as dictated by the Ninth Circuit, is whether a technically false statement made to a debtor could have disadvantaged the least sophisticated debtor in responding to the complaint. *Afewerki v. Anaya Law Grp*., 868 F.3d 771, 774 (9th Cir. 2017). Listing an address belonging to a consumer, but not the very last one, would not serve to disadvantage a consumer in responding to a lawsuit. Accordingly, such a statement would not be material, even though the Fair Debt Buying Act required it. Thus, just because the Fair Debt Buying Act requires that the "charge-off creditor" be identified, does not make it "material" for purposes of the Rosenthal Act.

Likewise, in this circumstance, whether Prosper purchased the debt prior to charge-off, or one month later, could not have disadvantaged Plaintiff in responding to the complaint where Plaintiff was correctly instructed that both Velocity and Prosper had title to the account at one time. Further, the loan documents themselves specifically inform the consumer that the debt originating with WebBank will be serviced by, and sold to Prosper. *See*, Borrower Registration Agreement, P. 3-4 (last paragraph). In fact, Plaintiff affirms in her declaration that her only association of the account was with Prosper.

Importantly, identifying the charge-off creditor is markedly different from identifying the original creditor. An original creditor conducted business directly with the consumer. The original creditor originated the debt. Of course, a consumer would find this information to be vital to their response as it would help her determine if she indeed incurred the debt. Whether a creditor was the creditor at the time of charge-off, or one month later, does not even have any meaning to a least sophisticated consumer. Accordingly, in this circumstance, the statement that Prosper was the charge-off creditor is not actionable due to immateriality.

Respectfully submitted,

DATED: February 1, 2019                 MANDARICH LAW GROUP, LLP


By: */s/ Nicole M. Strickler*

Nicole M. Strickler (IL 6298459)
Messer Strickler, Ltd.
225 W. Washington St., Suite 575
Chicago, IL 60606
(312) 334-3442 (direct)
(312) 334-3473 (fax)
nstrickler@messerstrickler.com
*Pro Hac Vice*

*Certificate of Service*

I, Nicole Strickler, hereby certify that I caused a copy of the attached to be filed using the CM/ECF system which will provide notice to all counsel of record on February 1, 2019 including:

**Scott M Grace**
The Grace Law Group, APC
1958 Sunset Cliffs Boulevard
San Diego, CA 92107
619-346-4600
Fax: 619-346-4612
Email: sgrace@lawlh.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clinton J Rooney**
Rooney and Lickel
225 Broadway Suite 1900
San Diego, CA 92101
619-234-0212
Fax: 619-232-1382
Email: rooneycdi@gmail.com
*ATTORNEY TO BE NOTICED*

**Stephen G Recordon**
Recordon and Recordon
225 Broadway Suite 1900
San Diego, CA 92101
619-232-1717
Fax: 619-232-1382
Email: 1sgrecordon@gmail.com
*ATTORNEY TO BE NOTICED*

*/s/Nicole M. Strickler*
Nicole M. Strickler (IL 6298459)
Messer Strickler, Ltd.
225 W. Washington St., Suite 575
Chicago, IL 60606
(312) 334-3442 (direct)
(312) 334-3473 (fax)
nstrickler@messerstrickler.com
*Pro Hac Vice*

DEFENDANT MANDARICH LAW GROUP, LLP'S REPLY
IN SUPPORT OF MOTION                    11                    CASE No. 18-cv-02257-FMO-SHK