Stephen G. Recordon (SBN 91401)
**Recordon & Recordon**
225 Broadway, Suite 1900
San Diego, CA  92101
Phone: (619) 232-1717
Facsimile: (619) 232-5325
1sgrecordon@gmail.com
Attorneys for Plaintiff Ngoc Jenny Tran

Nicole M. Strickler (IL 6298459)
**Messer Strickler, Ltd.**
225 W. Washington St., Suite 575
Chicago, IL 60606
nstrickler@messerstrickler.com
Attorney for Defendant
Mandarich Law Group, LLP

Gregory K. Sabo, Esq. (SBN 169760)
Molshree Gupta, Esq. (SBN 275101)
**Chapman Glucksman Dean & Roeb**
11900 West Olympic Boulevard, Suite 800
Los Angeles, CA 90064
gsabo@cgdrblaw.com
mgupta@cgdrlaw.com
Attorney for Defendant
Velocity Investments, LLC

Dara Chevlin Tarkowski
**Actuate Law LLC**
641 W. Lake Street, 5th Floor
Chicago, IL 60661
dara.tarkowski@actuatelaw.com
Attorney for Defendant
Velocity Investments, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

Ngoc Jenny Tran,

                Plaintiffs,

vs.

Velocity Investments, LLC and Mandarich Law Group, LLP,

                Defendants.

Case No. 18-cv-02257-FMO-SHK

**Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment**

Judge: Hon. Fernando M. Olguin
Date:  December 5, 2019
Time:  10:00 A.M.

# TABLE OF CONTENTS

I.     INTRODUCTION ......................................................... 1

    A.     Plaintiff's Introduction…..….....….......................... 1

    B.     Defendants' Introduction ...................................... 2

II.    STATEMENT OF FACTS .......................................…......... 4

    A.     Plaintiff's Statement of Facts ................................. 4

    B.     Defendants' Joint Statement of Facts ............................... 12

III.   ARGUMENT ........................................................... 12

    A.     Enforceability of the Promissory Note ............................. 12

        *Plaintiff's Affirmative Position* ......................... 12

        *Defendants' Affirmative Position* ..................................... 16

        *Defendants' Joint Response* ..................................... 27

    B.     Identity of the charge-off creditor and the chain of title ......... 34

        *Plaintiff's Affirmative Position* .........................…... 34

        *Defendants' Affirmative Position* …………………..……..... 36

        *Defendants' Joint Response* ..................................... 39

    C.     Whether Mandarich violated the FDCPA ........................... 41

        *Plaintiff's Affirmative Position* ……………..…….... 41

        *Defendants' Affirmative Position* ..................................... 44

        *Defendants' Joint Response* …………………..……..... 47

    D.     Whether Defendants Violated the Rosenthal Act ................... 49

        *Plaintiff's Affirmative Position* ……………..…….... 49

        *Defendants' Affirmative Position* ..................................... 51

        *Plaintiff's Response* ..................................... 53

        *Defendants' Joint Response* …………………..…….......... 54

    E.     Whether Velocity violated the FDBPA ........................... 55

        *Plaintiff's Affirmative Position* ……………..…….... 55

        *Defendants' Affirmative Position* ..................................... 56

        *Defendants' Joint Response* …………………..……........ 58

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

     **F.**     **Bona Fide Error Defense** ……………………….…….. **62**

          *Defendants' Affirmative Position* ……………....……….. **62**

          *Plaintiff's Response* ……………………..………………….. **70**

**V.**    **CONCLUSION** …………………………………….. **73**

     **A.**     **Plaintiff's Introduction** …..……………………….. **73**

     **B.**     **Defendants' Introduction** …..……………………….… **73**

1

## TABLE OF AUTHORITIES

2

*Abdollahzadeh v. Mandarich Law Group, LLP*,

3

    922 F.3d 810 (7th Cir. 2019) ………………………………...………… 41

4

*Afewerki v. Anaya Law Grp.*,

5

    868 F.3d 771 (9th Cir. 2017) ………………………………. 40, 45-46, 58

6

*Anderson v. Thacher*,

7

    (Cal. App. Sept. 11, 1946) 76 Cal. App. 2d 50 …………………….…... 26

8

*Associated Indem. Corp. v. Ind. Acc. Com.*,

9

    56 Cal. App. 2d 804 (1943) ………………………………………………… 53

10

*Baker v. G.C. Services Corp.*,

    677 F.2d 775 (9th Cir. 1982) ……………………………………….. 70

11

*California v. Day*,

12

    76 Cal. App. 2d 536 (1946) …………………………………………………12

13

*Clark v. Capital Credit & Collection Servs.*,

14

    460 F.3d 1162 (9th Cir. 2006) ………………………………………… 63

15

*Donohue v. Quick Collect, Inc.*,

16

    592 F.3d 1027 (9th Cir. 2010) ………………………………………… 42

17

*Fox v. Citicorp, N.A.*,

18

    15 F 3d 1507 (9th Cir. 1994) …..……………………………... 54, 63

19

*Gonzales v. Arrow Fin. Servs., LLC*,

    660 F.3d 1055 (9th Cir. 2011) ……………………………………… 42-43

20

*Heathman v. Portfolio Recovery Assocs., LLC*,

21

    2013 U.S. Dist. LEXIS 27057 (S.D. Cal. Feb. 27, 2013) ………………… 46

22

*Heintz v. Jenkins*,

23

    514 U.S. 291 (1995) ……………………………………………...… 41, 46

24

*Mansfield v. Midland Funding, LLC*,

25

    2011 U.S. Dist. LEXIS 34102 (S.D. Cal. 2011) ………………………… 44

26

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*,

27

    637 F.3d 939 (9th Cir. 2011) …………………………………… 42-43, 63

*Merritt v. Reserve Ins. Co.*,
    34 Cal. App. 3d 858 (Cal. Ct. App. 1973) ……………………..…… 52-53

*Mills v. Boyle Mining Co.*,
    132 Cal. 95 (1901) ……………………………………………………… 27

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) …………………………………………… 18

*Odish v. CACH, LLC*,
    2012 U.S. Dist. LEXIS 157114 (S.D. Cal. 2012) ……………………….. 44

*Otten v. San Francisco Hotel Etc. Assn.*,
    74 Cal. App. 2d 341 (Cal. Ct. App. 1946) …………………………….. 53

*Pacific Factors, Inc. v. St. Paul Hotel, Inc.*,
    113 Cal. App. 657 (Cal. Ct. App. 1931) …………………....……….…… 27

*Petley v. San Diego Cty. Credit Union*,
    2017 WL 385742 (S.D. Cal. Jan. 27, 2017) …………………..……….. 50-51

*Prasad v. Pinnacle Mgmt. Servs. Co., LLC*,
    2018 U.S. Dist. LEXIS 6232 (N.D. Cal. Jan. 12, 2018) ………………… 19

*Reichert v. Nat'l Credit Systems, Inc.*,
    531 F.3d 1002 (9th Cir. 2008) ……………………………....… 63-64, 72-73

*Riggs v. Prober & Raphael*,
    681 F.3d 1097 (9th Cir. 2012) …………………………………..… 51, 54

*Russell v. Union Oil Co.*,
    7 Cal. App. 3d 110 (1970) …………………………………………... 13

*Soule v. GM Corp.*,
    8 Cal. 4th 548 (Cal. Sup. Ct. 1994) ……………………………………… 52

*Vargas v. Ruggiero*,
    Cal. App. 5th Dist. (Dec. 6, 1961) ………………………………....... 26

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) ……………………………………… 57, 59

*Well v. Ray Klein, Inc.*,

    2019 U.S. Dist. LEXIS 66310 (D. Or. Feb. 1, 2019) …………….…... 64

*White v. Uniroyal, Inc.*,

    155 Cal. App. 3d 1 (Cal. Ct. App. 1984) …………………………..……… 52

*Wiseley v. Amazon.com, Inc.*,

    709 F. App'x 862 (9th Cir. 2017) …………………………………… 20, 22

## I.    INTRODUCTION

### *Plaintiff's Introduction*

Defendants Velocity Investments, LLC ("Velocity") and Mandarich Law Group, LLP ("Mandarich") violated the Rosenthal Act, and Mandarich violated the Fair Debt Collection Practices Act ("FDCPA") when Defendants filed a collection lawsuit against Plaintiff Ngoc Jenny Tran that misrepresented the existence of a valid, enforceable "Borrower Promissory Note," the amount of money due, and the identity of the "charge-off creditor" and the chain of title generally.  The failure to identify the true charge-off creditor also subjects Velocity to liability under California's Fair Debt Buying Practices Act ("FDCPA").

These misrepresentations both caused Ms. Tran actual damages, as well as entitling her to recover statutory damages, and her attorney's fees and costs. Plaintiff now seeks partial summary judgment as to the issue of liability, leaving damages for trial.

**Plaintiff's Objection Regarding Page Length and Number of Responses per Topic**

Plaintiff objects to the Defendants' submission of the following sections: *Defendants' Response Introduction, Defendants' Joint Response to the topic "Enforceability of the Promissory Note", Defendants' Joint Response to the topic "Identity of the Charge of Creditor and the Chain of Title, Defendants' Joint Response to the topic "Whether Mandarich Violated the FDCPA", Defendant Velocity Investments, LLC's Response to the topic "Whether Defendants Violated the Rosenthal Act and Defendant Velocity Investments, LLC's Response to the topic "Whether Velocity Violated the FDBPA."*

This Court's January 24, 2019 Order [Docket No. 28] indicated that for each topic in the brief:

The parties shall work cooperatively to create a single,

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

fully integrated joint brief covering all parties' summary judgment motions, in which each issue (or sub-issue) raised by a party is immediately followed by the opposing party's/parties' response. The joint brief shall set out each issue (or sub-issue), including legal argument and citation to evidence and the joint appendix of undisputed and disputed facts (i.e., not simply to the joint appendix of undisputed and disputed facts), followed seriatim by the response with respect to that issue (or sub−issue), including legal argument and citation to evidence.

Plaintiff's reading of this Order is that each party may only address each topic once. For each of the topics listed above, Defendants submitted both an affirmative position, and a response to Plaintiff's affirmative position, in other words, two arguments per topic. The parties met and conferred on this issue, but were unable to reach agreement.

Plaintiff also objects to the number of pages of argument submitted by Defendants. In this Court's January 24, 2019 Order, the Court ordered that:

Each separately-represented party shall be limited to twenty-five (25) pages, exclusive of tables of contents and authorities

Here, nearly all of Defendants' submissions are joint. It is unclear whether the Court intended to allow Defendants who share a common position to pool their pages to create a common page limit of fifty pages, and Plaintiff objects to the use of fifty pages to advocate for a single unified position, when Plaintiff is left with only 25 pages.

## *Defendants' Joint Introduction*

Plaintiff filed her Complaint purporting to state a claim for relief against Defendants Mandarich Law Group ("MLG") and Velocity Investments, LLC ("Velocity") asserting three causes of action, including violations of the Fair Debt Collection Practices Act (Count One), the Rosenthal Act (Count Two), and the

California Fair Debt Buyer Practices Act (Count III).[1] Plaintiff's claims all stem from MLG's filing of a collection lawsuit on behalf of its client, Velocity, against Plaintiff in state court (the "State Court Complaint"). Specifically, Plaintiff alleges that the State Law Complaint contains two false statements: (i) that there was a valid Promissory Note; and (ii) that Velocity is the only purchaser of Tran's loan post-charge off. Because neither of these statements are false—Plaintiff entered into a valid and enforceable Promissory Note and Velocity is the only post-charge off purchaser of Plaintiff's debt—Plaintiff cannot demonstrate that the State Law Complaint was false and, therefore, has not and cannot demonstrate a violation of the Fair Debt Collection Practices Act, the Rosenthal Act, or the California Fair Debt Buyer Practices Act. MLG and Velocity are further entitled to the bona fide error defense under the Fair Debt Collection Practices Act, the Rosenthal Act, and the California Fair Debt Buyer Practices Act.

### *Defendants' Response Introduction*

At the core of Plaintiff's Complaint is the false argument that Plaintiff Tran is not bound by the Borrower Registration Agreement, the Attorney-In-Fact Provision included in the Borrower Registration Agreement, or the Borrower Promissory Note. Instead of alleging actually deceptive representations made by Defendants Velocity or Mandarich, Plaintiff argues that the State Court Complaint contains false statements because the parties disagree on the enforceability of two legal agreements.

This dispute is one of a purely legal nature, as Plaintiff does not dispute that she:

- applied for a loan from WebBank;

---

[1] Counts I and II are directed at Mandarich, while Counts II and III are directed at Velocity.

- checked an electronic box during the loan application process, by which she attested that she agreed to the Borrower Registration Agreement;
- checked an electronic box during the loan application process, thereby attesting that she agreed to the Attorney-In-Fact Provision;
- received the loaned funds from WebBank; and
- used those funds to pay off other debts.

Despite the fact that there is no dispute that Plaintiff Tran checked these boxes during the application process and agreed to these Agreements, Plaintiff Tran now argues that she should not be bound by the Borrower Registration Agreement or the Borrower Promissory Note. ***Plaintiff does not allege that there was anything false, deceptive, or misleading about the Borrower Registration Agreement***. She does not allege that there was anything false, deceptive, or misleading about the Borrower Promissory Note. Further, she does not allege that she did not understand these Agreements. She even admits that she checked the electronic box, verifying that she agreed to these two agreements. Nevertheless, she now seeks to renege on the Borrower Registration Agreement and Promissory Note, which Plaintiff admits that she consented to, and pursuant to which she accepted and used thousands for dollars loaned to her. Because Plaintiff has not and cannot demonstrate that the Borrower Registration Agreement, Attorney-In-Fact Provision, or Borrower Promissory Note are unenforceable, Plaintiff's Motion for Partial Summary Judgment should be denied and Defendants' Motion for Summary Judgment should be granted on all counts.

## II.     STATEMENT OF FACTS

### ***Plaintiff's Statement of Facts***

Plaintiff incorporates by reference the facts laid out by Plaintiff in the Parties' Statement of Uncontroverted Facts ("SUF") and the documents in the parties' Joint Appendix ("JA").

*Prosper Funding, LLC*

Prosper Funding, LLC and Prosper Marketplace, Inc are located in San Francisco, California, as well as Phoenix, Arizona. [SUF P11, JA Exhibit 23-Cassidy Depo, page 29, line 23 to page 30, line 5].

Prosper Funding, LLC, ("Prosper") an entity with no employees offers and processes applications for loans issued solely by WebBank, and solely to individuals. [SUF P12, P13 and P14, JA Exhibit 23, Cassidy Depo., page 23, lines 7-14, page 24, line 23 to page 25, line 12, and page 29, line 23 to page 30, line 5, page 73, lines 7-12].

Prosper only offers "consumer" loans for personal, household or individual purposes. [SUF P15, JA Exhibit 23, Cassidy Depo., page 24, line 23 to page 25, line 12].

Prosper regularly purchases the loans it processes from the issuer, WebBank, within about three days from issuance of the loan. [SUF P16 and P17, JA Exhibit 23, Cassidy Depo., page 28, line 16 to page 29, line 3 and page 29, lines 1-11]. Shortly thereafter, Prosper then regularly sells these loans to their "investors." [SUF P18 and P19, JA Exhibit 23, Cassidy Depo., page 27, line 2 to page 29, line 18]. By the time WebBank agrees to issue a loan through Prosper Funding, LLC, and the loan is "fully funded," an "investor" has typically already agreed to purchase the loan from Prosper Funding, LLC. [SUF P20, JA Exhibit 23, Cassidy Depo., page 52, line 21 to page 53, line 25].

When WebBank issues a loan to a consumer through Prosper's website, they do so based on a "Borrower Promissory Note" which Prosper generates through their software platform. [SUF P21 and P22, JA Exhibit 23, Cassidy Depo., page

89, line 19 to page 92, line 21 and JA Exhibit 45-"Borrower Promissory Note" Ex 29 to *Deposition of Michael J. Cassidy*]. The "Borrower Promissory Note" is "signed" for the consumer by Prosper Funding, LLC or Prosper Marketplace, Inc, and Prosper Funding, LLC considers the "Borrower Promissory Note" to be executed when WebBank approves the loan. [SUF P23 and P24, JA Exhibit 23, Cassidy Depo., page 94, line 7 to page 95, line 7, Defendant Mandarich Law Group, LLP's Answer and Affirmative Defenses to Plaintiff's Complaint, ¶30 [Docket No. 15] and JA Exhibit 45-"Borrower Promissory Note" Ex 29 to *Deposition of Michael J. Cassidy*]. The propriety and legality of Prosper signing a contract for Ms. Tran is part of the controversy now before this Court.

*Ms. Tran Applies for a Loan*

On or about June 11, 2015, Ms. Tran began applying for a personal loan on Prosper's website. [SUF 25, JA Exhibit 1-Tran Dec ¶4]. Ms. Tran did not finish that day, and re-started her application on June 22, 2015. [SUF 26 and 27, JA Exhibit 1-Tran Dec ¶6].

In order to obtain a loan through Prosper website, Ms. Tran had to check, or "click" a box on various pages on Prosper Funding, LLC's website, in order to indicate her consent to the terms on that page, or to indicate that she had received the disclosures on that page. Ms. Tran had to "click" or check a box indicating her consent to Prosper's Terms of Use and Electronic Consent, Data Terms of Use, Authorization to Debit and Borrower Registration Agreement and Limited Power of Attorney in order to continue with the loan application process. [SUF P29, P30, P34 and P35, JA Exhibit 1-Tran Dec ¶¶7-9, JA Exhibit 23, Cassidy Depo., page 59, line 9 to page 61 line 21 and page 62, line 18 to page 64, line 19 and page 65, lines 13-19, page 76, line 17 to page 77, line 2, page 86, line 24 to page 87, line 12 and page 89, lines 3-18, JA Exhibit Exhibit 30-"Terms of Use and Electronic Consent", Ex 15 to *Deposition of Michael J. Cassidy*, JA Exhibit 31-"Terms of

Use and Electronic Consent", Ex 16 to *Deposition of Michael J. Cassidy*, JA Exhibit 33-"Data Terms and Use", Ex 17 to *Deposition of Michael J. Cassidy*, Exhibit 34-"Data Terms of Use", Ex 18 to *Deposition of Michael J. Cassidy*, Exhibit 42-"Authorization to Debit Account", Ex 26 to *Deposition of Michael J. Cassidy* and JA Exhibit 44-"Borrower Registration Agreement and Limited Power of Attorney", Ex 28 to *Deposition of Michael J. Cassidy*]

Mr. Tran also had to "click" or check a box indicating her receipt of Prosper's Privacy Disclosure, Phone Number Disclosure, and Credit Bureau Disclosure in order to continue with the loan application process. [SUF P31, P32 and P33, JA Exhibit 1-Tran Dec ¶¶7-9, JA Exhibit 23, Cassidy Depo., page 67, line 7 to page 68, line 14, page 73, line 15 to page 74, line 20, and page 75, line 20 to page 76, line 3, JA Exhibit 35-"Prosper Privacy Policy", Ex 19 to *Deposition of Michael J. Cassidy*, JA Exhibit 36-"Prosper Privacy Policy", Ex 20 to *Deposition of Michael J. Cassidy*, Exhibit 39-"Phone Number Disclosure", Ex 23 to *Deposition of Michael J. Cassidy,*and Exhibit 41-"Credit Bureau Disclosure", Ex 25 to *Deposition of Michael J. Cassidy*].

*Prosper's claimed Power of Attorney document*

As to Prosper's "Registration Agreement and Limited Power of Attorney," while Ms. Tran did "click" or check a box on a screen indicating her consent to this document, she did not do so in the presence of any witnesses, or before a notary public, and no other person signed or assented to this document on her behalf and in her presence.  [SUF P36, P37 and P38, JA Exhibit 1-Tran Dec ¶¶9-13, JA Exhibit 23, Cassidy Depo, page 89, lines 3-18].

Ms. Tran "clicked" on Prosper's "Registration Agreement and Limited Power of Attorney" at or slightly before 2:23 P.M. on June 22, 2015, and by 4:22 P.M. that day Prosper sent Ms. Tran a message indicating that Ms. Tran's loan with WebBank was "fully funded," indicating that WebBank had approved Ms.

Tran's loan  [SUF P39, P40 and P41, JA Exhibit 23, Cassidy Depo, page 52, line 21 to page 53, line 5, page 100, lines 1-16 and page 102, lines 9-11 and JA Exhibit 47-"Event History", Ex 32 to *Deposition of Michael J. Cassidy*].

It was not until Prosper sent Ms. Tran the message that her loan was "fully funded", at 4:22 P.M., that Ms. Tran had access to a copy of the "Borrower Promissory Note." Ms. Tran first viewed the "Borrower Promissory Note" at some point after this.  [SUF P42 and P43, JA Exhibit 1-Tran Dec ¶¶18-21, JA Exhibit 23, Cassidy Depo, page page 100, lines 1-16 and page 102, lines 9-11, JA Exhibit 45-"Borrower Promissory Note", Ex 29 to *Deposition of Michael J. Cassidy* and JA Exhibit 47-"Event History," Ex 32 to *Deposition of Michael J. Cassidy*].

When Ms. Tran could finally see the "Borrower Promissory Note," she could not do anything with this document other than read it:  she could not and did not check any box indicating her consent to this document.  [SUF P44 and P45, JA Exhibit 1-Tran Dec ¶¶15-17, 22-27 and 41-47, JA Exhibit 23, Cassidy Depo, page 33, line 5 to page 36, line 8, page 89, line 19 to page 90, line 13 page 93, line 7 to page 96, line 13 page 98, and line 21 to page 99, line 1, and JA Exhibit 45-"Borrower Promissory Note," Ex 29 to *Deposition of Michael J. Cassidy*].

In the interim, WebBank deposited $9,500.00 of Ms. Tran's $10,000.00 loan (loan number 362366) into her bank account, pocketing $500.00 for themselves. [SUF P46 and P47, JA Exhibit 1-Tran Dec ¶28, JA Exhibit 23, Cassidy Depo, page 40, line 19 to page 41 line 10, JA Exhibit 25, DiPaolo Depo, page page 23, lines 3-7 and JA Exhibit 49-"Prosper Support" (Loan #362366), Ex 36 to *Deposition of Michael J. Cassidy*].

Ms. Tran used the money she received on the account at issue primarily for personal, household and family purposes, including paying down part of a balance owed on a Capital One credit card and an American Express Card that Ms. Tran had used to pay for groceries and gasoline, and Ms. Tran also gave her mother

money to help pay for rent and food expenses. [SUF P10, JA Exhibit 1-Tran Depo, ¶¶29-30].  Ms. Tran made significant payments to Prosper, estimated to be at least $6,078.24.  [JA Exhibit 1-Tran Depo, ¶¶31-32].

*Prosper Sells Ms. Tran's Account to SVTW, LP*

During the same period, Prosper sold Ms. Tran's account, loan 362366, to a third party "investor."  [SFU 48, JA Exhibit 23, Cassidy Depo, page 27, line 2 to page 29, line 18, page 43, line 22 to page 44, line 16, page 52, line 21 to page 53, line 25 and page 118, line 15 to page 123, line 22 and JA Exhibit 49, -"Prosper Support" (Loan #362366) Ex 36 to *Deposition of Michael J. Cassidy*].

It appears likely that a company called "SVTW, LP" bought Ms. Tran's loan.  SVTW, LP possesses business records concerning Prosper and loan 362366, the name name "SVTW, LP" appears as a "seller" on the Bill of Sale under which Velocity Investments, Inc claims to have purchased Ms. Tran's account, and SVTW, LP was identified in discovery by Velocity Investments, LLC as a party with knowledge regarding Ms. Tran's account. [SFU P49, P50 and P51, JA Exhibit 2-Grace Dec, ¶¶7-8, JA Exhibit 3, Recordon Dec, ¶¶18-21, JA Exhibit 12, Exhibit 12-Plaintiff's Interrogatories (No 1), JA Exhibit 13- Defendant Velocity Investments, LLC's April 11, 2019 Responses to Interrogatories (No 1), JA Exhibit 25-DiPaolo Depo, page 18, lines 13-24 and page 26, line 25 to page 28, line 9, JA Exhibit 50-"Bill of Sale," Ex 5 to *Deposition of Matthew DiPaolo*, JA Exhibit 63-Document Subpoena to SVTW, L.P. and JA Exhibit 64-Response to Document Subpoena to SVTW, L.P. (Prosper Positions File Sample.pdf)(page 1, column entitled "Loan Number")].

*Mandarich Law Group, LLP and Velocity Investmens, LLC sue Ms. Tran*

On June 4, 2018, Mandarich Law Group, LLP filed a complaint on behalf of and as agent for Defendant Velocity Investments, LLC, in the Superior Court of California for the County of San Bernardino against Plaintiff, in the matter of

*Velocity Investments, LLC v. Ngoc Jenny Tran*, *et al*, case number CIVDS1814035 ("State Court Action"). [SUF P56, JA Exhibit 67-State Court Complaint filed in *Velocity Investments, LLC v Ngoc Jenny Nguyen,* Superior Court of California for the County of San Bernardino case number CIVDS1814035, and Defendant Mandarich Law Group, LLP's Answer and Affirmative Defenses to Plaintiff's Complaint, ¶16 [Docket No. 15]]

In their state court complaint, Defendants claimed that Ms. Tran executed a "Promissory Note" with "WebBank," that she owed a debt of $7,284.39 based on this Promissory Note, that the "charge off creditor" for Ms. Tran's loan was Prosper Funding, LLC, and that Velocity was "the only entity that purchased this debt after charge off," which implies that Velocity purchased the debt at issue from Prosper. [SUF P57, JA Exhibit 67-State Court Complaint filed in *Velocity Investments, LLC v Ngoc Jenny Nguyen,* Superior Court of California for the County of San Bernardino case number CIVDS1814035]

The State Court Action is still ongoing, and trial is currently set in the State Court for December 18, 2019. [SUF P58, JA Exhibit 2-Grace Dec, ¶4].

*Velocity Investments, LLC*

Velocity regularly purchases "charged off" consumer debts incurred for personal, family or household purposes, regularly attempts to collect those debts, and is a debt buyer as defined by California Civil Code §1788.50(a).  [SUF P1, P2 and P3, JA Exhibit 2-Grace Dec, ¶¶7-8, JA Exhibit 3-Recordon Dec, ¶¶14-15, JA Exhibit 10- Plaintiff's Requests for Admission, Nos 3-6, JA Exhibit 11- Defendant Velocity's Responses to RFA's, Nos 3-6].

While Velocity claims to have policies and procedures to avoid the violations at issue in this action, such as failing to disclose the true "charge-off creditor" and true chain of title for the debt at issue, their designated witness had no knowledge of SVTW, LP, and did not know who owned Ms. Tran's account at

1  the time it was purportedly sold to Velocity.  [SUF P52 and P53, JA Exhibit 25-
2  DiPaolo Depo, page page 26, line 25 to page 28, line 9, page 28, line 17 to page
3  29, line 7, and page 53, lines 9-14].

4  *Mandarich Law Group, LLP*

5      Mandarich Law Group, LLP ("Mandarich") is a person who uses an
6  instrumentality of interstate commerce or the mails in a business the principal
7  purpose of which is the collection of debts, or who regularly collects or attempts to
8  collect, directly or indirectly, debts owed or due or asserted to be owed or due
9  another and is therefore a debt collector as that phrase is defined by 15 U.S.C.
10  §1692a(6). [SUF P5, Defendant Mandarich Law Group, LLP's Answer and
11  Affirmative Defenses to Plaintiff's Complaint, ¶14 [Docket No. 15]]  Mandarich
12  regularly litigates debt collection cases against consumer defendants, and the
13  majority of the debts that Mandarich collects are consumer debts in nature.  [SUF
14  P6 and P7, JA Exhibit 24, Vos Depo, page page 8, lines 8-22].

15      Mandarich regularly files debt collection lawsuits on behalf of Velocity,
16  incuding suits on Velocity debts involving Prosper Funding, LLC.  [SUF P8 and
17  P9, JA Exhibit 24-Vos Depo, page age 26, line 13 to page 27, line 20 and JA
18  Exhibit 25-DiPaolo Depo, page 7, lines 16-23].

19      While Mandarich claims to have policies and procedures to avoid the
20  violations at issue in this action, such as failing to disclose the true chain of title for
21  the debt at issue, Mandarich does not require its attorneys to know which seller
22  sold the account on which they are filing suit and continues to claim that Velocity
23  purchased the account at issue from Prosper even after this federal action was filed
24  [SUF P54 and P55, JA Exhibit 24-Vos Depo, page 36, line 20 to page 37, line 23
25  and page 46, line 13 to page 47, line 8].

26  ***Defendant's Joint Statement of Facts***

27

Defendants incorporate the facts in their Legal Argument Sections below and the facts that are not disputed by Defendants in the attached Statement of Uncontroverted Facts ("SUF").

## III.   ARGUMENT

## A.   ENFORCEABILITY OF THE PROMISSORY NOTE

### *Plaintiff's Affirmative Position*

Defendants Defendants Velocity Investments, LLC ("Velocity") and Mandarich Law Group, LLP ("Mandarich") filed a collection lawsuit against Ms. Tran in which they represented a right to collect $7,284.39 based on an unenforceable "Borrower Promissory Note." [SUF P57, JA Exhibit 67-State Court Complaint filed in *Velocity Investments, LLC v Ngoc Jenny Nguyen,* Superior Court of California for the County of San Bernardino case number CIVDS1814035].

The amount of interest Defendants are attempting to collect is around double the consideration that Ms. Tran received once her payments are taken into account. [JA Exhibit 1-Tran Depo, ¶¶31-32].  This indicates that Defendants are claiming a right to compound interest, which is only available in California with an enforceable written agreement.   See *California v Day*, 76 Cal App 2d 536, 554 (1946).   In other words, if the "Borrower Promissory Note" is unenforceable, Defendants are both misrepresenting the existence of contractual rights they do not have, and the amount that Ms. Tran actually owes.

Here, the 'Borrower Promissory Note" is clearly unenforceable because Ms. Tran never signed it.  In fact, she never saw a filled out, complete version of this document until after her loan had been "executed" by Prosper, and even then, there was no way for her to sign or otherwise indicate consent to this contract.  [SUF P44 and P45, JA Exhibit 1-Tran Dec ¶¶15-17, 22-27 and 41-47, JA Exhibit 23, Cassidy Depo, page 33, line 5 to page 36, line 8, page 89, line 19 to page 90, line

1   13 page 93, line 7 to page 96, line 13 page 98, and line 21 to page 99, line 1, and

2   JA Exhibit 45-"Borrower Promissory Note," Ex 29 to *Deposition of Michael J.*

3   *Cassidy*].

4        With no consent by Ms. Tran, the "Borrower Promissory Note" clearly fails.

5   Like every other jurisdiction in this country, California requires consent as an

6   element of contract formation.  See Civil Code §§1550 and 1565.  That consent

7   must be knowing and manifested:

8            Acceptance of an offer, which may be manifested by
             conduct as well as by words, must be expressed or
9            communicated by the offeree to the offeror.

10  *Russell v. Union Oil Co.* 7 Cal.App.3d 110, 114 (1970)

11       While no one doubts that Ms. Tran wanted a loan, that does not translate into

12  the kind of knowing manifestation of consent to a written promissory note that

13  Civil Code §§1550 and 1565 require.  Written contracts for a debt, with payments

14  for over a period of twelve months, require a signature of some kind, by the party

15  to be bound.  California's Statute of Frauds, found at California Civil Code §1624,

16  provides that:

17       (a) The following contracts are invalid, unless they, or some note or
         memorandum thereof, are in writing and subscribed by the party to be
18       charged or by the party's agent:

19       (1) An agreement that by its terms is not to be performed within a year
         from the making thereof.
20
         Here we have a "Promissory Note" requiring payments over 36 months,
21
    surely subject to California Civil Code §1624(a)(1). [JA Exhibit 45-"Borrower
22
    Promissory Note," Ex 29 to *Deposition of Michael J. Cassidy*].
23
24       Written "promissory notes" for payments of over a year are not enforceable

25  without a signature of some kind, and Ms. Tran did not sign the document at issue.

26  Defendants, though, claim they do not need Ms. Tran's signature, as they have a

27

written document with the name "Prosper Marketplace" printed as signor, based on a purported "power of attorney." [JA Exhibit 45-"Borrower Promissory Note," Ex 29 to *Deposition of Michael J. Cassidy*].

*Defendants' Purported "Power of Attorney" fails as well*

Defendants' claim that Prosper Marketplace, Inc could sign the "Borrower Promissory Note" on Ms. Tran's behalf, based on Ms. Tran's earlier electronic "checkbox" signature on a contract with Prosper Funding, LLC, entitled "Borrower Registration Agreement and Limited Power of Attorney." [JA Exhibit 44-"Borrower Registration Agreement and Limited Power of Attorney", Ex 28 to *Deposition of Michael J. Cassidy*]

Ms. Tran did, indeed, click or check a box indicating her consent to this document. [SUF P35, JA Exhibit 23-Deposition of Michael J. Cassidy, page 86, line 24 to page 87, line 12 and page 89, lines 3-18, JA Exhibit 44-"Borrower Registration Agreement and Limited Power of Attorney" Ex 28 to *Deposition of Michael J. Cassidy*, and JA Exhibit 1-Declaration of Ngoc Jenny Tran in Support of Plaintiff's Motion for Partial Summary Judgment, ¶¶7-9]

The fact that Ms. Tran was willing to click a box on a website on a form contract does not suffice to grant Prosper Marketplace, Inc a valid "power of attorney" sufficient to bind Ms. Tran to the "Borrower Promissory Note" though.

California Probate Code §4121(c) requires that any grant of a power of attorney be signed by either Ms. Tran, or another adult, in her presence and with her consent, in the presence of two witnesses, or with a notarized signature. And, as shown above, all that Ms. Tran did was click a box on a website, with no witnesses, no notary, and no other signor acting on her behalf in her presence. [SUF P36, P37 and P38, JA Exhibit 1-Tran Dec ¶¶9-13, JA Exhibit 23, Cassidy Depo, page 89, lines 3-18].

Defendants have also attempted to claim that because the "Borrower Promissory Note" with WebBank *the one Ms. Tran never signed*, has a Utah choice of law clause in it, we should then impute that clause to the earlier "Borrower Registration Agreement and Limited Power of Attorney" with Prosper. There is no reason to presume that a choice of law clause with one party, WebBank, would affect an earlier contract with a different party, Prosper.

Regardless, California already anticipated this gambit and specifically prohibited this attempt to force Utah law on California residents.

Prosper is located in San Francisco.  [SUF P11, JA Exhibit 23-Cassidy Depo, page 29, line 23 to page 30, line 5].  The "Borrower Registration Agreement and Limited Power of Attorney" lists a San Francisco address for Prosper, and Ms. Tran's address, which appears throughout Prosper's loan application, is also a California address.   [JA Exhibit 44-"Borrower Registration Agreement and Limited Power of Attorney" Ex 28 to *Deposition of Michael J. Cassidy*, at Bates Stamp page Prosper 000057, ¶22(a)(iii)(b) and Prosper 000060, ¶18(a)(iii)(b)], and JA Exhibit 46-"Loan Truth in Lending Disclosure" Ex 30 to *Deposition of Michael J. Cassidy*)

California Probate Code §4001(b)(3) provides that a principal may not waive the execution formalities of a power of attorney, and California Probate Code §4052 provides that California's Probate Code governs powers of attorney *regardless of choice of law clauses* as long as the power of attorney was executed in California or the principal was domiciled in California.  Here, there appears to be no dispute that Ms. Tran lived in California and any actions she engaged in took place in California.

Defendant's cannot draft their way around California's clear statutory protections of California residents.

As there is no real dispute that Ms. Tran did not "sign" the "Borrower Registration Agreement and Limited Power of Attorney" in the presence of two witnesses or a notary, there is little doubt that this document does not meet the requirements of California Probate Code §4121(c).  Under California Probate Code §4001(b)(3) and California Probate Code §4052, California law governs this document, and there is no serious debate that Ms. Tran cannot grant Prosper Marketplace, Inc a California "power of attorney" with an internet clickbox.

With no valid power of attorney, the signature on the "Borrower Promissory Note" does not meet the requirements of California's Statute of Frauds, and this document is not enforceable.  With no enforceable "promissory note," Defendants had not basis to claim an amount that includes compound interest and fees, and have made a misrepresentation as to the amount of the debt at issue.

### *Defendant's Joint Affirmative Position*

All of Plaintiff's claims hinge on the argument that the State Court Complaint filed by Mandarich on behalf of Velocity contains two false statements: (i) that there is a valid Promissory Note which requires Plaintiff Tran to pay back her debt; and (ii) that Velocity is the only post-charge-off purchaser. [SUF D1; Complaint, Docket No. 1, hereinafter "Compl.", ¶¶ 47, 54.] Because neither of these statements are false, Plaintiff has not and cannot demonstrate that Mandarich or Velocity violated the FDCPA, the Rosenthal Act, or the California FDBPA.

**THE PROMISSORY NOTE SIGNED ON PLAINTIFF TRAN'S BEHALF, PURSUANT TO WHICH PLAINTIFF TRAN RECEIVED FUNDS, IS ENFORCEABLE.**

Plaintiff's makes several challenges to the enforceability of the Promissory Note. Primarily, she argues that the Promissory Note is not valid because she did not physically and personally sign the agreement. [Compl. ¶ 25.] Plaintiff secondarily contends that the Borrower Registration Agreement, which contains

1    the Attorney-In-Fact Provision appointing Prosper as her agent, is not valid
2    because Tran did not physically sign the document. [Compl. ¶ 39.] Additionally,
3    she argues that the Attorney-in-Fact Provision is not enforceable because of an
4    irrelevant provision of California probate law. [Compl. ¶ 40.]

5         Yet the Borrower Registration Agreement is Enforceable, the Attorney-In-
6    Fact Provision within the Borrower Registration Agreement is enforceable, and the
7    Promissory Note is certainly enforceable because: (i) agreements signed
8    electronically are enforceable pursuant to Federal law, Utah law, and California
9    law; (ii) the Borrower Registration Agreement is subject to Utah law; and, so (iii)
10   the California Probate code in no way applies; and (iv) even if the California
11   Probate Code did apply, the Code does not exclude other methods of creating a
12   valid power of attorney.

### A.    The Borrower Registration Agreement is Enforceable, Even Though Tran Signed It Electronically.

13   Plaintiff does not contest that she received a loan from WebBank, or that she
14   failed to pay WebBank the amounts owed under the loan. [SUF D17; *see* JA
15   Exhibit 26 - Tran Dep. at 93, L. 19 – P. 94 L. 9.] Instead, she desires to litigate the
16   legality of the Promissory Note at issue in this federal action, in lieu of state court
17   where this matter truly belongs. Regardless of the venue Plaintiff chooses,
18   however, her claims that the Promissory Note violates California law are
19   misguided.

20   "Contracts formed on the internet come primarily in two flavors: 'clickwrap'
21   (or 'click-through') agreements, in which the website users are required to click on
22   an 'I agree' box after being presented with a list of terms and conditions of use;
23   and 'browsewrap' agreements where a website's terms and conditions of use are
24   generally posted on the website via a hyperlink at the bottom of the screen."

*Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1176 (9th Cir. 2014). The Promissory Note in this case falls into the former category.

Here, on June 24, 2015, Plaintiff executed a "Borrower Registration Agreement" under loan number 362366 for a loan of money including finance charges for the amount of $10,000. [SUF D2; *See* JA Exhibit 68 - K. Walch Decl., P. 1.] During the electronic loan application process, Plaintiff was required to create a unique e-mail and password that was connected to her online account. [SUF D11; JA Exhibit 68 – K. Walch Decl., P. 2.] Plaintiff does not dispute that she provided her electronic mail address and a unique password for her online account. [*See* SUF D12; JA Exhibit 26 - Tran Dep., P. 64, L. 10-22.] The electronically signed Agreement was electronically delivered by Prosper Marketplace (the servicer), and could only be accessed by Plaintiff through her unique e-mail and password verification. [SUF D13; JA Exhibit 26 - Tran Dep., P. 64, L. 10-22.] She was required to electronically check a box and click a button to agree to the Borrower Registration Agreement. [SUF D14; JA Exhibit 26 - Tran Dep., P. 64, L. 10-22.] Plaintiff subsequently received a $9,500[2] deposit to her bank account. [*See* SUF D16; JA Exhibit 26 – Tran Dep. at P. 31, L 7—P. 32 L 19; P. 29, L. 25—P. 30, L 3; JA Exhibit 68, P. 9, Confirmation of Electronic Funds Deposit.] In short, Plaintiff could not have completed the loan application process and thereafter received the $9,500.00 deposit unless she had checked a box and clicked a button to agree to the Borrower Registration Agreement. In fact, Plaintiff herself does not contest entering into the Borrower Registration Agreement. [*See* JA Exhibit 26 - Tran Dep., P. 79, L. 7–P. 80, L. 18.] And actually, she recalls

---

[2] In her deposition, Plaintiff confirmed that she was advised that the amount received would be $9,500 as a result of a $500.00 origination fee she was advised of prior to entering into the transaction. [SUF D15; s*ee* JA Exhibit 26 - Tran Dep., P. 31, L 7—P. 32 L 19; P. 29, L. 25—P. 30, L 3.]

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

"agreeing to the promissory note electronically." [*See* SUF D5; JA Exhibit 26 - Tran Dep., P. 33, L. 2-21; P. 34, L. 14-18.]

Both federal and California law (the state Uniform Electronic Transactions Act - Cal. Civ. Code § 1633 *et seq*.) and the Electronic Signatures in Global and National Commerce Act (E-SIGN) (15 U.S.C. § 7001 *et seq*.) provide that agreements may not be denied legal effect because they are in electronic form or have electronic signatures. California's Uniform Electronic Transactions Act provides that "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *See* Cal. Civ. Code § 1633.9; *Prasad v. Pinnacle Mgmt. Servs. Co., LLC*, 2018 U.S. Dist. LEXIS 6232, at *6 (N.D. Cal. Jan. 12, 2018). Ms. Tran concedes she completed the entire loan application online. [*See* JA Exhibit 26 - Tran Dep., P. 26, L. 1-9.]

California's Uniform Electronic Transactions Act, which governs electronic transactions, allows Prosper's electronic records to serve as unequivocal proof of the transaction. California Civil Code § 1633.5 ("UETA") applies to "transaction[s] between parties each of which has agreed to conduct the transaction by electronic means." Cal. Civ. Code § 1633.5(b). While the Code carefully carves out certain transactions, such as the creation of wills, appointment of an attorney-in-fact is not excluded. *See generally* Cal. Civ. Code § 1633.3. Under the UETA, signatures may not be denied legal effect or enforceability solely because they are in electronic form and contracts may not be denied legal effect or enforceability solely because an electronic record was used in its formation. *See* Cal. Civ. Code § 1633.7 (a)-(b). In short, if a law requires a record to be in writing, or a signature, an electronic record satisfies the law. *See* Cal. Civ. Code § 1633.7 (c)-(d).

The "transaction" here falls under the UETA[3] because it is not found in the exclusions mentioned in Cal Civ. Code § 1633.3 and the parties agreed that it would

be conducted by electronic means. [*See* SUF D7; JA Exhibit 44 - Borrower Registration Agreement, ¶ 23 ("THIS AGREEMENT INCLUDES YOUR EXPRESS CONSENT TO ELECTRONIC TRANSACTIONS AND DISCLOSURES. YOU EXPRESSLY AGREE THAT EACH OF (A) THIS AGREEMENT AND (B) ANY PROMISSORY NOTE WE SIGN ON YOUR BEHALF IN THE FORM SET FORTH ON THE ATTACHED EXHIBIT (A), MAY COMPRISE A 'TRANSFERABLE RECORD' FOR ALL PURPOSES UNDER THE ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT AND THE UNIFORM ELECTRONIC TRANSACTIONS ACT.").] Thus, there was nothing stopping Plaintiff from appointing Prosper as her agent for the express purpose of executing the Promissory Note. Accordingly, under the California UETA, the power of attorney is valid.

California law does not allow a party to escape contract obligations if she had actual or constructive notice its terms. *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir 2017). Accordingly, in checking a box and clicking a button to agree to the Borrower Registration Agreement, Plaintiff entered into a valid agreement under California law. In entering into that Borrower Registration Agreement, Plaintiff authorized Prosper to act as her "attorney-in-fact" for the

---

[3] The UETA authorizes the use of electronic records and signatures in lieu of signed writings in connection with a "transaction", which is defined as "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial, or governmental affairs." Cal Civ. Code § 1633.2(o). For example, a power of attorney that is given to facilitate execution of a note is almost certainly part of a transaction, since the agency appointment in the power of attorney is an action between two persons (principal an agent), and the execution and delivery of the power of attorney is expressly intended to relate to the conduct of commercial affairs.

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

limited purpose of executing a promissory note on her behalf in the form set forth on the attached Exhibit A in favor of WebBank. [SUF D9; *see* JA Exhibit 44 - Borrower Registration Agreement, ¶ 24, P. 7 of 10.] The Promissory Note was electronically executed by Prosper on the same date the Borrower Registration Agreement was signed. [SUF D19; s*ee* JA Exhibit 45 - Promissory Note, P. 2.] The Promissory Note shows Prosper's electronic signature as "Attorney-in-Fact for Ngoc Jenny Tran" and is dated June 24, 2015. [SUF D20.] For the same reasons discussed above regarding to the Borrower Registration Agreement, the electronic signature on the Promissory Note is valid under California law and was legally binding on Plaintiff.

Even if, however, application of the California UETA was not enough to quash Plaintiff's theory, the fact remains that Utah law governs the Borrower Registration Agreement. [*See* SUF D10; JA Exhibit 44 - Borrower Registration Agreement ¶ 16 ("This Agreement shall be governed by federal law and, to the extent that state law applies, the laws of the State of Utah.").] As Utah has also adopted the UETA, *see* Utah Code § 46-4-101, the Attorney-In-Fact Provision is similarly valid under Utah law.

Regardless of whether the Borrower Registration Agreement, containing the Attorney-In-Fact Provision is analyzed pursuant to federal, Utah, or California law, Tran agreed to the Borrower Registration Agreement, and such Agreement cannot be denied legal effect because Tran's signature was electronic instead of physically written on a piece of paper.

## B.   The Attorney-In-Fact Provision of the Borrower Registration Agreement is Enforceable.

California law does not allow a party to escape contract obligations if she had actual or constructive notice its terms. *Wiseley v. Amazon.com, Inc*., 709 F. App'x 862, 864 (9th Cir. 2017). Yet, Plaintiff argues that the Promissory Note is

not enforceable because the power of attorney provision in the Promissory Note did not comply with California Probate Code §4121. Plaintiff is wrong for two reasons. First, Utah law, not California law, applies to the Borrower Registration Agreement and the Attorney-In-Fact Provision contained therein. Second, California Probate Code §4121 does not provide the exclusive method for forming a power of attorney under California law. Additionally, Plaintiff argues that the Attorney-In-Fact provision is somehow invalidated because of an unexplained conflict of interest. Plaintiff cannot establish that a conflict of interest exists for this extremely limited power of attorney, which only allowed Prosper to execute the Promissory Note on Tran's behalf; the Promissory Note that Plaintiff received at the time she agreed to the Borrower Registration Agreement and the Attorney-In-Fact Provision contained therein. Finally, even if the attorney-in-fact provision did not create a formal power of attorney, Tran instructed Prosper as her agent to executed the Promissory Note on her behalf. Because Plaintiff cannot demonstrate how this Attorney-In-Fact Provision or this limited agency is invalid, she is bound by the terms of the Promissory Note.

### i.   Utah Law Governs the Borrower Registration Agreement and Plaintiff Has Not Demonstrated a Violation of Utah Law

Utah law, not California law, governs the Borrower Registration Agreement. [*See* JA Exhibit 44 - Borrower Registration Agreement ¶ 16 ("This Agreement shall be governed by federal law and, to the extent that state law applies, the laws of the State of Utah.").] Utah law was not chosen arbitrarily. "All loans originated through the platform are made by WebBank, A Utah-chartered industrial bank ("WebBank"). [*See* JA Exhibit 44 - Borrower Registration Agreement at P. 1.] Contrary to Plaintiff's position, California's Probate Code does not go so far as to govern powers of attorney executed in California or by a principal domiciled in California regardless of choice of law provisions. *See* Cal. Probate Code § 4052.

Indeed, the Law Revision Commission's comments to § 4052 make clear that powers of attorney may specify choice of law. *See* Law Revision Commission Comments (1994) ("The power of attorney may also specify choice of law.").

Importantly, Utah did not have any witness or notary requirements for a power of attorney at the time the Borrower Registration Agreement was consented to by Plaintiff (June 24, 2015).[4] Utah Code Ann. § 75-5-501 to § 75-5-504 (repealed); *see* also, House Bill 74, 2016 Ut. HB 74 ("This bill: . . . sets requirements for execution and termination . . . ."). Accordingly, the evidence here demonstrates that Tran consented to the enforceable Attorney-In-Fact Provision in the Borrower Registration Agreement, regardless of the law in California.

> ii.   *California Probate Code § 4121 Does Not Provide the Only Method by Which a Power of Attorney Can Be Granted in California.*

As to the second point, California Probate Code Division § 4121 does not provide the exclusive method of granting a power of attorney in California. Section 4121 is part of the broader California Probate Code Division 4.5 – Powers of Attorney. *See* Cal. Prob. Code § 4000 *et seq*. Both Sections § 4050 and § 4408 of this Division make clear that this Division of the Probate Code has a limited application.

First, § 4050 - "Application of division" explicitly states that this Division— including § 4121—only applies to: (i) durable powers of attorney; (ii) statutory powers of attorney pursuant to Part 3 of the Division; and (iii) any other power of

---

[4] The Utah legislature has since adopted the Uniform Power of Attorney Act, but same did not become effective until May 10, 2016. See, 2016 Ut. HB 74. Thus, Utah Code Ann. § 75-9-105(1) stating that a power of attorney be signed before a notary public was not in effect at the time the Borrower Registration Agreement was entered into. *See* Utah Code Ann. § 75-9-106 ("A power of attorney executed in this state on or after May 10, 2016, is valid if its execution complies with § 75-9-105. A power of attorney executed in this state before May 10, 2016 is valid if its execution complied with the law of this state as it existed at the time of execution.").

attorney that explicitly incorporates or refers to Division 4.5. *See* Cal. Prob. Code § 4050(a)(1)-(3). The Attorney-In-Fact Provision at issue here is not a durable power of attorney, is not a statutory form power of attorney,[5] and does not and would not reference this Division of the California Probate Law because the Attorney-In-Fact Provisions is governed by Utah law. Significantly, § 4050(c) explicitly states that "This division is not intended to affect the validity of any instrument or arrangement that is not described in subdivision (a)." Cal. Prob. Code § 4050(c). Because the Attorney-In-Fact Provision is not one of the three enumerated powers of attorney in § 4050(a), Probate Code Division 4.5 – Powers of Attorney does not apply to it or limit it in any way.

Second, Section 4408 makes clear that nothing in this Division affects or limits the use of any other form for a power of attorney. A form that complies with the requirements of "any law other than the provision of this part" may be used instead of the form set forth in Section 4401, and none of the provisions of this part apply if the other form is used. *See also* Cal. Prob. Code § 4401 (Deering, Lexis Advance through all 1016 chapters of the 2018 Regular Session and the November 6, 2018 Ballot Measures) ("Neither this section, nor the part as a whole, attempts to provide an exclusive method for creating a power of attorney. Other forms may be used and other law employed to create power of attorney. *See* Section 4408. However, this part should be sufficient for most purposes.") In short, while an individual may certainly grant a power of attorney utilizing Section 4121, it is not the exclusive method of appointing an attorney in fact under California law.

---

[5] Section 4401 of the California Probate Code defines the "Statutory Power of Attorney." In that section, the Code provides a form power of attorney that has been deemed "legally sufficient." *See* Cal. Prob. Code § 4401. Because the Attorney-In-Fact Provision in the Borrower Registration Agreement is completely different from, and did not attempt to follow, the form power of attorney provided in Section 4401, the Attorney-In-Fact Provision is not a statutory power of attorney.

### iii.    Conflict of Interest

Plaintiff also appears to argue that this power of attorney is invalid due to an alleged conflict of interest. However, while Plaintiff's citation for this proposition, Probate Code § 4232(a), states that an attorney-in-fact has a duty to act solely in the interest of the principal and to avoid conflicts of interest, § 4232(a) does not serve to invalidate a power of attorney. Instead, Cal Prob. Code Div. 4.5, Pt. 2, Ch. 4, Art. 2, serves to create and describe a duty of care. Additionally, § 4232(b) provides that there is no breach of the duty even if the attorney-in-fact has conflicting interests regarding the affairs of the principal. Thus, even if § 4232 could hypothetically serve to invalidate a power of attorney, there is no evidence that Prosper actually breached any duty to Plaintiff in doing exactly what Plaintiff authorized it to do.

Here, the power of attorney was specifically limited to signing a copy of the Promissory Note, the form of which was provided to Plaintiff at the same time she contractually agreed to the Borrower Registration Agreement. This limited power-of-attorney, which is outlined in the Borrower Registration Agreement and is subject to Utah Law, is in no way impacted by the California Probate Code.

Moreover, at the time Plaintiff consented to the Borrower Registration Agreement, no statutory duty existed on the part of an "attorney-in-fact" to act solely in the interest of the principal and to avoid conflicts of interest. *See* Utah Code Ann. § 75-5-501 to § 75-5-504 (repealed). Accordingly, the claimed conflict on the part of Prosper also cannot operate as a bar to the Attorney-In-Fact Provision in the Borrower Agreement. Moreover, even if a duty of care existed on the part of the agent and California law applied, there is nothing in the California Probate Code that would automatically render a power of attorney invalid as a result of a conflict. *See generally* Cal. Probate Code. Rather, the law merely

clarifies that any exercise of authority by an "attorney-in-fact" is subject to a duty of care. *See* Cal. Prob. Code § 4266.

Here, that duty of care cannot be said to have been breached as Prosper merely performed a single and specific mechanical act which was explicitly authorized by the Plaintiff, with full knowledge of the terms of the Promissory Note to be executed by Prosper on her behalf. As Prosper was properly authorized to sign the Promissory Note on Plaintiff's behalf, Plaintiff is bound by the terms of the Promissory Note.

> **iv.   Even If the Attorney-In-Fact Provision Did Not Create a Formal Power of Attorney, Plaintiff Still Agreed to Have the Promissory Note Executed by Prosper, As Her Agent.**

Lastly, even if the Borrower Registration Agreement failed to establish a formal "power of attorney" under the applicable law, the fact remains that Plaintiff appointed Prosper as her agent to execute the Promissory Note at issue. An agency relationship may be informally created—no particular words are necessary, nor need there be consideration; all that is required is conduct by each party manifesting acceptance of relationship whereby one of them is to perform work for other under latter's direction. *Vargas v. Ruggiero* (Cal. App. 5th Dist. Dec. 6, 1961), 197 Cal. App. 2d 709, 17 Cal. Rptr. 568, 1961 Cal. App. LEXIS 1400. In fact, an agency may be created not only by written instrument or word of mouth, but may be implied by the conduct of the parties. *Anderson v. Thacher* (Cal. App. Sept. 11, 1946), 76 Cal. App. 2d 50, 172 P.2d 533, 1946 Cal. App. LEXIS 681. Here, Plaintiff undoubtedly appointed Prosper as her agent for purposes of executing the Promissory Note. Under California law, Plaintiff could do so in a number of ways, including informally. Thus, even if, hypothetically, the Attorney-In-Fact Provision failed to necessarily meet the qualifications of the probate code, Plaintiff's appointment of Prosper as her agent still suffices.

1    Moreover, the retention of consideration in a transaction by a party
2    constitutes ratification of agency. For example, the retention of the consideration of
3    a note by a corporation with full knowledge of all parties interested, operates as a
4    ratification of the authority of the agents who executed it. *Mills v. Boyle Mining*
5    *Co.* (Cal. Mar. 1, 1901), 132 Cal. 95, 64 P. 122, 1901 Cal. LEXIS 1010; *see also*
6    *Pacific Factors, Inc. v. St. Paul Hotel, Inc.* (Cal. App. Apr. 27, 1931), 113 Cal.
7    App. 657, 299 P. 88, 1931 Cal. App. LEXIS 1043 (The act of an agent of a
8    corporation in signing a guaranty on a promissory note was ratified by the
9    corporation in accepting and retaining the benefits of the transaction.). As a result,
10   Plaintiff's retention of the loan proceeds in this case ratified Prosper's execution of
11   the Promissory Note. In short, Plaintiff's counsel's creative legal arguments do not
12   serve to invalidate Plaintiff's obligations under the Promissory Note.

13   ### ***Defendants' Joint Response***

14   **THE BORROWER REGISTRATION AGREEMENT AND ATTORNEY-IN-FACT**
15   **PROVISION ARE ENFORCEABLE.**

16   **A.    Plaintiff *ADMITS* That She Consented to And Agreed to Both the**
      **Borrower Registration Agreement and The Attorney-In-Fact**
17    **Provision.**

18    All of Plaintiff's claims are based on the notion that the Borrower
19   Registration Agreement and the Borrower Promissory Note are unenforceable
20   because Plaintiff did not consent to them:

21              With no consent by Ms. Tran, the "Borrower Promissory
22              Note" clearly fails.  Like every other jurisdiction in this
                country, California requires consent as an element of
23              contract formation.  See Civil Code §§1550 and 1565.
                That consent must be knowing and manifested:
24              Acceptance of an offer, which may be manifested by
25              conduct as well as by words, must be expressed or
                communicated by the offeree to the offeror. *Russell v.*
26              *Union Oil Co.* 7 Cal.App.3d 110, 114 (1970).
27

[Tran MSJ at P. 13, L. 11-18.]. Yet, Plaintiff explicitly admits in her Motion for Summary Judgment that she consented to both the Borrower Registration Agreement and the included Attorney-in-Fact Provision. [SUF D6; *see* SUF D8.]

Specifically, Plaintiff admits that she verified her consent to the Borrower Registration Agreement and Attorney-In-Fact Provision:

- "Ms. Tran had to "click" or check a box indicating her consent to Prosper's Terms of Use and Electronic Consent, Data Terms of Use, Authorization to Debit and ***Borrower Registration Agreement and Limited Power of Attorney*** in order to continue with the loan application process."

- "As to Prosper's "Registration Agreement and Limited Power of Attorney," while Ms. Tran did "click" or check a box on a screen indicating her consent to this document, she did not do so in the presence of any witnesses, or before a notary public, and no other person signed or assented to this document on her behalf and in her presence."

- "Ms. Tran "clicked" on Prosper's "Registration Agreement and Limited Power of Attorney" at or slightly before 2:23 P.M. on June 22, 2015 …"

- Ms. Tran did, indeed, click or check a box indicating her consent to this document [referring to the Borrower Registration Agreement and Attorney-In-Fact Provision]."

[Tran MSJ at P. 6, L. 20-23; P. 7, L. 20-24; P. 8, L.1-2; P. 14, L. 17-18 (emphasis added).] Plaintiff Tran reiterates these admissions in her Declaration in Support of Plaintiff's Motion for Partial Summary Judgment:

- "In order to obtain a loan through Prosper Funding, LLC's website, I had to check, or "click" a box on various pages of their website, in order to indicate my consent to the terms on that page, or to indicate that I had received the disclosures on that page."

- "Again, in order to obtain a loan through Prosper Funding, LLC's website, I had to check, or "click" a box on various pages of their website, in order to indicate my consent to the terms on that page, or to indicate that I had received the disclosures on that page."

- "On June 22, 2015, I "clicked" boxes on Prosper Funding, LLC's website to indicate that I either consented to the terms of the following documents, or received the disclosures in these documents: . . . k. Borrower Registration Agreement and Limited Power of Attorney."

[JA Exhibit 1 – Tran Decl., ¶¶ 5, 7, 8.] As Plaintiff has repeatedly admitted that she consented to and agreed to the Borrower Registration Agreement and Attorney-In-Fact Provision, Plaintiff's confusing and inconsistent argument that she did not consent to the Borrower Registration Agreement fails.

Further, Plaintiff has not and cannot demonstrate that the electronic authorization, which Plaintiff provided by checking the box and which Plaintiff was required to authorize to receive the loan funds, is not valid. Plaintiff's fundamental argument as to why the Borrower Registration Agreement is unenforceable is simply because the Borrower Registration Agreement is electronic and Plaintiff's consent to the Agreement is electronic. As outlined in detail in Defendants' Motion for Summary Judgment, an agreement may not be denied legal effect because it is in an electronic form or uses electronic signatures pursuant to federal, California, and Utah law. Plaintiff has failed to even address this issue in her Motion for Summary Judgment, opting instead to solely focus on an inapplicable probate code.

### B. The Fact that the Borrower Registration Agreement is a Form Contract Does Not in Any Way Make It Unenforceable.

As an attempt to bolster the flawed argument that the Borrower Registration Agreement is unenforceable, despite the fact that Plaintiff consented to it, Plaintiff now argues that the fact that the "Borrower Registration Agreement" was a "form" contract somehow makes it unenforceable:

> The fact that Ms. Tran was willing to click a box on a website on a form contract does not suffice to grant Prosper Marketplace, Inc a valid "power of attorney"

1  
2  sufficient to bind Ms. Tran to the "Borrower Promissory
Note" though.

[Tran MSJ at P. 14, L. 23-25.] Plaintiff fails to cite to any case law or legal support

whatsoever to support this argument. The fact that Borrower Registration

Agreement is a standard contract that is provided to each of the individuals who

applied for a loan from WebBank in no way makes it unenforceable and Plaintiff

has not provided the Court with any legal support for this throwaway argument.

### C.   Utah Law Controls the Borrower Registration Agreement and the Borrower Promissory Note.

Plaintiff's Motion for Summary Judgment demonstrates a fundamental

misunderstanding of the Borrower Registration Agreement. Plaintiff acknowledges

that Utah law controls the Borrower Promissory Note, but then argues that Utah

law does not apply to the Borrower Registration Agreement because the choice of

law in the Borrower Promissory Note should not be imputed to the Borrower

Registration Agreement:

> Defendants have also attempted to claim that because the
> "Borrower Promissory Note" with WebBank *the one Ms.*
> *Tran never signed*, has a Utah choice of law clause in it,
> we should then impute that clause to the earlier
> "Borrower Registration Agreement and Limited Power of
> Attorney" with Prosper. ***There is no reason to presume***
> ***that a choice of law clause with one party, WebBank,***
> ***would affect an earlier contract with a different party,***
> ***Prosper.***

[Tran MSJ at P. 15, L. 8-13.] Defendants are not arguing that the choice of law

from the Promissory Note should be imputed to the Borrower Registration

Agreement. Instead, it is clear from simply reading the Borrower Registration

Agreement and the Promissory Note that ***both*** agreements contain a choice of law

provision, which demonstrate that Utah law governs both agreements. Specifically,

the Borrower Registration Agreement contains the following choice of law

provision in Paragraph 19. Miscellaneous: "This Agreement shall be governed by federal law and, to the extent that state law applies, the laws of the State of Utah." [JA Exhibit 44- Borrower Registration Agreement, ¶ 16.] Separately, the Borrower Promissory Note contains the same choice of law provision in Paragraph 16. Governing Law: "This Note is governed by federal law and, to the extent that state law applies, the laws of the State of Utah." [JA Exhibit 45 - Borrower Promissory Note, ¶ 16.]

It appears from Plaintiff's argument in her Motion for Summary Judgment, that Plaintiff did not realize that the Borrower Registration Agreement contained its own choice of law provision. Because Utah law clearly governs both agreements and because Plaintiff has not and cannot nullify or void Paragraph 19 of the Borrower Registration Agreement, Utah and not California law applies to the Borrower Registration Agreement.

**D.    California Probate Code in No Way Nullifies the Borrower Registration Agreement or the Borrower Promissory Note's Choice of Law Provisions.**

In her Motion for Summary Judgment, Plaintiff argues that California Probate Code somehow negates and voids choice of law provisions in otherwise enforceable agreements.

> California Probate Code §4001(b)(3) provides that a principal may not waive the execution formalities of a power of attorney, and California Probate Code §4052 provides that California's Probate Code governs powers of attorney *regardless of choice of law clauses* as long as the power of attorney was executed in California or the principal was domiciled in California. Here, there appears to be no dispute that Ms. Tran lived in California and any actions she engaged in took place in California.

[Tran MSJ at P. 15, L. 24 – P. 16, L. 3.]

*Significantly, "Probate Code § 4001(b)(3)" does not exist*. California Probate Code § 4001 has no subsections and simply states that "Sections 4124, 4125, 4126, 4127, 4206, 4304, and 4305 may be cited as the Uniform Durable Power of Attorney Act." Cal. Prob. Code § 4001. As there is no subsection (b)(3) of Section 4001, Plaintiff has failed to demonstrate now this nonexistence provision of the California Probate Code somehow invalidates the otherwise enforceable Attorney-In-Fact Provision.

Even if that section of the probate code existed it would be irrelevant because *the Probate Code expressly does not apply to the power of attorney provision contained in the Borrower Registration Agreement*. "[T]he Probate Code provisions concerning powers of attorney only apply to durable powers of attorney, statutory powers of attorney under the Uniform Statutory Form Power of Attorney Act (Prob. Code, § 4400 et seq.), and powers of attorney that specifically incorporate the Probate Code provisions. (Prob. Code, § 4050, subd. (a).)" *Jozefowicz v. Allstate Ins. Co.* (Cal. App. 4th Dist. May 28, 2019) 35 Cal. App. 5th 829, 835–36, 247 Cal. Rptr. 3d 758, 763, 835 (rejecting the argument that a power of attorney that was not notarized or witnessed by two people was unenforceable because the Probate Code did not apply).

Plaintiff further argues that "California Probate Code §4052 provides that California's Probate Code governs powers of attorney *regardless of choice of law clauses* as long as the power of attorney was executed in California or the principal was domiciled in California." [Tran's MSJ at P. 15:25 – 16:2.] This argument mischaracterizes this provision and attempts to mislead the court because this provision does not and cannot apply the Attorney-In-Fact Provisions at issue here. As explained in Defendants' Motion for Summary Judgment and above, the entire Division 4.5 Powers of Attorney (under which subsection 4052 falls) only applies to (i) durable powers of attorney; (ii) statutory powers of attorney; and (iii) powers

of attorney that specifically reference the California Probate provision. Therefore, Section 4052 does not apply to the Attorney-in-Fact Provision because the entire Division 4.5 does not apply. If there was any doubt, the Law Revision Commission Comments to Section 4052 from 1994 explicitly state that: "The rules in this section [4052] are subject to the general rules concerning the scope of the Power of Attorney Law set forth in Section 4050." Therefore, Plaintiff's argument that Section 4052 provides that California's Probate Code applies to any power of attorney "*regardless of choice of law clause*" is misleading in that the quoted language can only apply to a durable power of attorney, statutory power of attorney, or power of attorney that explicitly references the California Probate Code.

Because Section 4050 of the California Probate Code makes clear that Division 4.5 of the California Probate Code, including all of its subsections, do not apply to the Attorney-In-Fact Provision, any arguments that Plaintiff makes regarding the nonexistent Section 4001(b)(3) or Section 4052 are irrelevant.

**THE BORROWER PROMISSORY NOTE IS ENFORCEABLE.**

Plaintiff's main argument that the Borrower Promissory Note is unenforceable is based on the flawed argument that the Attorney-In-Fact Provision is unenforceable. In addition to the arguments already outlined in Defendants' affirmative Motion for Summary Judgment, it must be noted that Plaintiff's claim that she was not able to review the Borrower Promissory Note before she agreed to the Attorney-In-Fact Provision is false. In her Motion for Summary Judgment, Plaintiff argues that:

> It was not until Prosper sent Ms. Tran the message that her loan was "fully funded", at 4:22 P.M., that Ms. Tran had access to a copy of the "Borrower Promissory Note." Ms. Tran first viewed the "Borrower Promissory Note" at some point after this.

1   [Tran MSJ at P. 8, L. 8-11.] This argument is misleading. Although the Borrower
2   Promissory Note was not executed on her behalf until after Ms. Tran finished her
3   loan application, she not only received a copy of the Borrower Promissory Note,
4   but was required to check a box demonstrating that she consented to the Borrower
5   Registration Agreement, which included the Borrower Promissory Note.
6   Specifically, the Borrower Promissory Note is Exhibit A to the Borrower
7   Registration Agreement. Plaintiff admits that she agreed to the Borrower
8   Registration Agreement as of 2:23 P.M. on June 25, 2015, before she finalized her
9   loan application: "Ms. Tran 'clicked' on Prosper's 'Registration Agreement and
10  Limited Power of Attorney' at or slightly before 2:23 P.M. on June 22, 2015 . . . ."
11  [Tran's MSJ at P. 8, L.1-2.] Therefore, Ms. Tran not only consented to the
12  Borrower Registration Agreement before finalizing her loan application, but she
13  also consent to the Borrower Promissory Note.

**B.    Identity of the Charge of Creditor and the Chain of Title**

***Plaintiff's Affirmative Position***

**Identity of the charge-off creditor and the chain of title**

In the State Court Complaint, at paragraph 4, Defendants alleged that "The charge-off creditor at the time of charge-off is Prosper Funding, LLC…" and that Velocity was the only party who purchased the debt at issue after charge off (paragraph 2), clearly implying a direct assignment from Prosper to Velocity. [SUF P57, JA Exhibit 67-State Court Complaint filed in *Velocity Investments, LLC v Ngoc Jenny Nguyen,* Superior Court of California for the County of San Bernardino case number CIVDS1814035]

However, as Prosper repeatedly made clear, Prosper did not sell the debt to Velocity: they sold it to an "investor," likely SVTW, LP, only a few days after the loan was issued, and well before any delinquency or charge-off.  ." [SFU 48, JA Exhibit 23, Cassidy Depo, page 27, line 2 to page 29, line 18, page 43, line 22 to

page 44, line 16, page 52, line 21 to page 53, line 25 and page 118, line 15 to page 123, line 22 and JA Exhibit 49, -"Prosper Support" (Loan #362366) Ex 36 to *Deposition of Michael J. Cassidy*].

SVTW, LP possesses business records concerning Prosper and loan 362366, the name name "SVTW, LP" appears as a "seller" on the Bill of Sale under which Velocity Investments, Inc claims to have purchased Ms. Tran's account, and SVTW, LP was identified in discovery by Velocity Investments, LLC as a party with knowledge regarding Ms. Tran's account. [SFU P49, P50 and P51, JA Exhibit 2-Grace Dec, ¶¶7-8, JA Exhibit 3, Recordon Dec, ¶¶18-21, JA Exhibit 12, Exhibit 12-Plaintiff's Interrogatories (No 1), JA Exhibit 13- Defendant Velocity Investments, LLC's April 11, 2019 Responses to Interrogatories (No 1), JA Exhibit 25-DiPaolo Depo, page 18, lines 13-24 and page 26, line 25 to page 28, line 9, JA Exhibit 50-"Bill of Sale," Ex 5 to *Deposition of Matthew DiPaolo*, JA Exhibit 63-Document Subpoena to SVTW, L.P. and JA Exhibit 64-Response to Document Subpoena to SVTW, L.P. (Prosper Positions File Sample.pdf)(page 1, column entitled "Loan Number")].   While Plaintiff lacks personal knowledge of this transactions, the testimony of Prosper's designated witness, and the records of both Prosper and SVTW, LP indicate that Prosper sold the loan to SVTW, LP, or at least to a party other than Prosper.  It is clear that Defendants hid at least one of the owners of the loan in the chain of title, if not more, and then made false statements in their State Court Complaint.

1

### *Defendants' Joint Affirmative Position*

2

**THE STATE COURT COMPLAINT IS NOT AND CANNOT BE THE BASIS FOR THE**

3

**ALLEGED VIOLATIONS OF THE FDCPA, THE ROSENTHAL ACT, OR THE FDBPA.**

4

      **A.**    **The State Court Complaint Does Not Contain Any False**

5

              **Statements.**

6

Plaintiff alleges that the State Court Complaint contains three false

7

allegations. First, Plaintiff alleges that the State Court Complaint falsely states that

8

Velocity is able to collect on the Promissory Note: "Despite the obvious defects

9

with this unsigned 'Promissory Note,' Defendants chose to sue Tran and falsely

10

claim that they had the right to do so under the 'Promissory Note. This false

11

representation violates the FDCPA and the Rosenthal Act.'" [Compl. ¶¶ 47-48.]

12

Second, Plaintiff alleges that the State Court Complaint falsely alleges that

13

Velocity is the only purchaser of the debt post-charge off: "This false allegation

14

that Velocity is 'the only entity that purchased this debt after charge off,' or that

15

Velocity even owned the debt alleged, violates the FDBPA, the FDCPA and the

16

Rosenthal Act." [Compl. ¶ 54.] Third, Plaintiff alleges that the "amount of the debt

17

alleged" is false, not because of any alleged miscalculation, but because the

18

underlying Promissory Note is not valid: "Even if Velocity did somehow own the

19

account or debt at issue here, they did not have the right to sue for the principal

20

amount that they claimed. As the unsigned 'Borrower Promissory Note' that forms

21

the basis for Defendants' claims is invalid, Defendants had no right to collect

22

compound interest, fees, or the like from Tran." [Compl. ¶¶ 55-56.]

23

As discussed above, the Borrower Registration Agreement is enforceable,

24

the Attorney-In-Fact Provision is enforceable and, therefore, the Promissory Note

25

is enforceable. Thus, the representation the Mandarich made on Velocity's behalf,

26

that Velocity was able to collect on the Promissory Note was not false.

27

### i. *Velocity Is and Was the Only Post-Charge Off Creditor.*

Plaintiff further alleges, upon information and belief, that Velocity was not the only entity to have purchased the debt after charge-off. [Compl., ¶¶ 49-50.] Specifically, the statement in the State Court Complaint reads that Velocity was "the only entity that purchased the debt after charge off." [JA Exhibit 67, ¶ 2.] Because this statement is accurate, Plaintiff fails to establish her claim.

On June 22, 2015, Plaintiff Tran completed her application for a loan from WebBank. [SUF D18; JA Exhibit 6 – J. Goldston Decl., ¶ 8.] The following timeline demonstrates the chain of title for Tran's Loan:

- June 22, 2015 – Tran completes her loan application.
  [SUF D18; JA Exhibit 6 – J. Goldston Decl., ¶ 8.]

- June 24, 2015 – Tran's Loan was originated by WebBank.
  [SUF D21; JA Exhibit 6 – J. Goldston Decl., ¶10.]

- June 25, 2015 – WebBank sold the loan to Prosper Funding LLC.
  [SUF D22; JA Exhibit 6 – J. Goldston Decl., ¶11.]

- June 25, 2015 – Prosper Funding LLC sold the Loan to SVTW, L.P.
  [SUF D23; JA Exhibit 6 – J. Goldston Decl., ¶ 12.]

- February 1, 2017 – Tran's Loan was charged-off.
  [SUF D24; JA Exhibit 6 – J. Goldston Decl., ¶ 18.]

- March 20, 2017 – SVTW, L.P. through its agent, Prosper, sold Tran's loan to Velocity.
  [SUF D25; JA Exhibit 6 – J. Goldston Decl., ¶ 19.]

In addition to the J. Goldston's Declaration, the documents demonstrate this timeline and chain of title. Specifically, on January 25, 2013, WebBank entered into a Second Amended and Restated Loan Sale Agreement ("WebBank Loan Sale Agreement,") with Prosper Marketplace, Inc. and Prosper Funding, LLC. [SUF D26; JA Exhibit 6 – J. Goldston Decl., ¶ 4.] Pursuant to the WebBank Loan Sale Agreement, Prosper Funding, LLC and Prosper Marketplace, Inc. agreed to purchase loan accounts that were funded by WebBank. [SUF D27; JA Exhibit 6 –

1  J. Goldston Decl., ¶ 5 and Exhibit 1.] Separately, Prosper Funding LLC entered
2  into a Loan Purchase Agreement with SVTW, L.P. ("SVTW") ("SVTW Loan
3  Purchase Agreement") on April 17, 2015. [SUF D29; JA Exhibit 6 – J. Goldston
4  Decl., ¶ 6 and Exhibit 2.] Pursuant to the SVTW Loan Purchase Agreement,
5  Prosper Funding LLC agreed to sell and SVTW agreed to purchase unsecured
6  customer loans that were originated by WebBank. [SUF D30; JA Exhibit 6 – J.
7  Goldston Decl., ¶ 7.] When WebBank sold the loan to Prosper Funding LLC on
8  June 25, 2015, that sale was made pursuant to the WebBank Loan Sale Agreement.
9  [SUF D28; JA Exhibit 6 – J. Goldston Decl., ¶ 11.] When Prosper subsequently
10 sold the loan to SVTW, that sale was made pursuant to the SVTW Loan Purchase
11 Agreement. [SUF D31; JA Exhibit 6 – J. Goldston Decl., ¶ 12 and Exhibit 2.]

12      The sale of the Tran's Loan from WebBank to Prosper Funding LLC is
13 reflected in the Certificate of Sale. As explained in J. Goldston's Declaration, the
14 "Closing Date" referenced on the Certificate of Sale is the "Issued Date" on
15 Exhibit A to the Certificate of Sale. [JA Exhibit 6 – J. Goldston Decl., ¶ 11.] The
16 subsequent sale of the Loan to SVTW is reflected in Prosper's Register of Notes, a
17 screenshot of which is attached as Exhibit 4 to J. Goldston's Declaration. [JA
18 Exhibit 6 – J. Goldston Decl., Exhibit 4.]

19      After the Loan was sold to SVTW, it was charged off on February 1, 2017.
20 [SUF D32; JA Exhibit 6 – J. Goldston Decl., ¶¶ 18, 21.] Thus, the only creditor
21 that has purchased the loan since the charge-off is Velocity. [SUF D33; JA Exhibit
22 6 – J. Goldston Decl., ¶ 22.]

23              *ii.      The Interest and Fees Argument*

24      Plaintiff does not identify the fees or interest that was purportedly
25 unlawfully charged. Instead, she appears to conclude that any interest or fees were
26 unauthorized because the Promissory Note was "invalid." [Compl. ¶ 56.] As
27 explained above, however, the Promissory Note was not invalid in any sense. The

1
2
3
4
5
6
7

Promissory Note was properly executed, via electronic signature, in accordance with Utah and California law. Plaintiff also believes that Prosper's payment history on the loan is accurate. [SUF D34; s*ee* JA Exhibit 26 - Tran Dep., P. 35, L. 3-15 ("Q. Okay, Do you believe this accurately reflects the amount of payments that you made on your loan? A. Yes.").] In short, besides generally contesting the enforceability of the Promissory Note, Plaintiff has no legitimate objection to the amount sought. As such, this claim fails as well.

8

### *Defendants' Joint Response*

9
10
11
12
13
14
15
16
17

It is unclear from this section of Plaintiff's brief what law, exactly, Plaintiff is claiming was violated. Plaintiff contends that the state court complaint falsely alleged that Prosper was the charge-off creditor and that Velocity was the only entity to purchase the debt post charge- off. As to the contention that Velocity was not the only entity to purchase the debt post charge-off, Plaintiff cites to no evidence support this conclusion. The account was charged-off on February 1, 2017 [SUF D24] and purchased thereafter by Velocity on March 24, 2017 [SUF D25]. There is no evidence of any other purchase after charge-off. Accordingly, this claim—whatever law it is based under—is unfounded.

18
19
20
21
22
23
24

Further, as to the identity of the charge-off creditor, this claim is not pled against Mandarich. While Plaintiff clearly pleads this claim against Velocity under the Fair Debt Buying Act (*See,* Complaint §III), that Act only applies to debt purchasers. Mandarich is not a debt purchaser. Plaintiff has not pled this claim in the context of a FDCPA or Rosenthal Act violation and cannot do so at this stage in the litigation. And, Plaintiff has not even moved for summary judgment under the FDCPA or Rosenthal Act on this basis.

25
26
27

Notably, even if Plaintiff had pled a FDCPA or Rosenthal Act violation of this basis, it would fail based upon both materiality and the *bona fide error* defense.

In the Ninth Circuit, technically false statements made by the debt collector in a state court complaint are only material if they could have disadvantaged the least sophisticated debtor in responding to the complaint. *Afewerki v. Anaya Law Grp.,* 868 F.3d 771, 773-74 (9th Cir. 2017). Prosper was indeed the creditor before the debt was transferred to "SVTW". And then, Prosper was the selling agent for SVTW. Whether Prosper was the creditor before or at the time of charge-off is completely irrelevant within the context of the facts of this case. Prosper was the entity that sold the debt to Velocity by its appointment. Accordingly, Plaintiff did not suffer any disadvantage.

Under 15 U.S.C. §1692k(c), a debt collector cannot be subject to liability under the FDCPA (or the corresponding Rosenthal Act's provisions) if a violation was unintentional but resulted despite the maintenance of procedures reasonably adapted to avoid the error. Here, neither MLG nor Velocity was ever aware that the charge-off creditor was anyone other than Prosper. Further MLG's policy is to have, in hand, a certified or properly authenticated bill of sale evidencing transfer of the debt at issue to each owner which must include a "specific reference to the debt being collected" plus evidence of account opening or record of use of the account. [*See* JA Exhibit 62 – Vos Dep., Exhibit 6, Tran00223, MLG Attorney Meaningful Involvement Procedure; JA Exhibit 24 - Vos Dep., P. 35, L. 2 – P. 37, L. 23.] Further, on a quarterly basis, a supervising MLG attorney spot-checks samples of attorney accounts to ensure and confirm that attorneys are not filing suits without the appropriate documentation. [*See* JA Exhibit 62 – Vos Dep., Exhibit 6, Tran00224, MLG Attorney Meaningful Involvement Procedure.] MLG had in hand bills of sale which, it believed, identified the full transfer from the originator (WebBank) to the current owner (Velocity). These bills of sale do not evidence any entity by the name of "SVTW". Further, MLG relied on the representation of its client, Velocity, as to the identity of the charge-off creditor.

Velocity also had extensive policies and procedures, as described in its brief, to prevent errors as to the charge-off creditor. Despite the policy, it was not readily apparent that anyone other than Prosper owned the account on the date of charge-off. "§1692k(c) does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Abdollahzadeh v. Mandarich Law Group, LLP,* 922 F.3d 810, 818 (7th Cir. 2019). Thus, even if Plaintiff claims to have pled some sort of violation of the FDCPA or Rosenthal Act on this basis, Defendant would not be liable because of the bona fide error defense.

## C.      WHETHER MANDARICH VIOLATED THE FDCPA

### *Plaintiff's Affirmative Position*

At 15 USC 1692e and f, *et seq*, the Fair Debt Collection Practices Act ("FDCPA") prohibits misrepresentations in the collection of a debt, and unfair or unconscionable means to collect a debt, including collecting an amount not authorized by an enforceable agreement or otherwise allowed by law, under 1692f(1).

These prohibitions apply to litigation activities as well:

> And, as we have said, we conclude that the Seventh Circuit is correct. The Act does apply to lawyers engaged in litigation.

*Heintz v Jenkins*, 514 US 291, 294  (1995)

Mandarich has already admitted that they are a debt collector, and thus subject to the FDCPA.   [SUF P5, Defendant Mandarich Law Group, LLP's Answer and Affirmative Defenses to Plaintiff's Complaint, ¶14 [Docket No. 15]]

Mandarich also does not deny that they regularly litigate debt collection cases against consumer defendants, and the majority of the debts that Mandarich collects are consumer debts in nature.  [SUF P6 and P7, JA Exhibit 24, Vos Depo,

page page 8, lines 8-22].   There is no doubt that the FDCPA applies to Mandarich's debt collection litigation activity, including their collection lawsuit against Ms. Tran.

*Mandarich violated 15 USC 1692e*

The FDCPA prohibits a great swath of unconscionable and deceptive behavior by debt collectors.  Among these behaviors are misrepresentations.

> Seeking somewhat to level the playing field between debtors and debt collectors, the FDCPA prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices.

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)

15 USC 1692e and e(2), among other sections, prohibit the making of misrepresentations.  While this certainly includes outright lies, it also includes more subtle behavior, such as misleading or deceptive, but not necessarily false representations.  These representations do not have to mislead the debtor, but merely need to be likely to mislead or deceive the "least sophisticated debtor."

> The "objective 'least sophisticated debtor' standard ... ensures that the FDCPA protects all consumers, the gullible as well as the shrewd, ... the ignorant, the unthinking, and the credulous."

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011)

> "The 'least sophisticated debtor' standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor. The standard is designed to protect consumers of below average sophistication or intelligence, or those who are uninformed or naive, particularly when those individuals are targeted by debt collectors."

*Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061-1062 (9th Cir. 2011)

No reliance or actual damages are required, as the FDCPA is a strict liability statute.  "The FDCPA imposes strict liability on creditors, including liability for violations that are not knowing or intentional." *McCollough* at 952 (9th Cir. 2011)

If Mandarich makes any false, deceptive or misleading representation in the course of collecting a debt, such as a misrepresentation in the Complaint filed in this action, Msndarich violates the FDCPA.

Here, as discussed at length above, Mandarich falsely claimed the existence of an enforceable "Borrower Promissory Note," falsely claimed the right to collect amounts that included fees and compound interest that require a valid written contract, and falsely claimed that Prosper sold Ms. Tran's account to Velocity, in so doing hiding part of the chain of title that Mandarich would have to prove at trial in state court.

The FDCPA merely requires a single misrepresentation by a debt collector. Here we have multiple misrepresentations, by a debt collector who continues to press their false claims toward trial in state court.  If the "Borrower Promissory Note" is not enforceable, or if Prosper did not sell Ms. Tran's account directly to Velocity, then Mandarich had violated the FDCPA.

*Mandarich violated 15 USC 1692f as well*

The FDCPA, at 15 USC 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." At subsection (1), the FDCPA specifically prohibits "the collection of any amount (including any interest, fee, charge of expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Here, there was no "agreement creating the debt."  Mandarich's claim otherwise, and their insistence on continuing to pursue this false claim to trial in state court, clearly violate 15 USC 1692f.  Mandarich's liability here is entirely straightforward.

***Defendant's Joint Affirmative Position***

**MANDARICH DID NOT VIOLATE THE FDCPA.**

    **A.**    **Mandarich did not violate Section 1692d of the FDCPA.**

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The mere institution of a state court action, even if unsuccessful, does not have the "natural consequence" of prohibited § 1692d harassment. *See Culp v. CACH, LLC*, 2012 U.S. Dist. LEXIS 147633, at *12 (S.D. Cal. Sep. 20, 2012); *see also Mansfield v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 34102 (S.D. Cal. 2011) ("[A] debt collector may file a debt collection action even if the debt collector does not at the time of filing have adequate proof to support the claim."); *Odish v. CACH, LLC*, 2012 U.S. Dist. LEXIS 157114 (S.D. Cal. 2012) ("Merely filing a cause of action is insufficient to give rise to liability under the FDCPA."). After all, the State Court Complaint itself is merely a request for an impartial third party to decide a dispute between Plaintiff and MLG's client, Velocity. Other than filing the collection suit, Plaintiff points to no acts by Defendant that could "harass, oppress, or abuse" a person. Ironically, Plaintiff herself does not think MLG was "wrong for suing [her]" for a debt she never repaid. [*See* JA Exhibit 26 - Tran Dep., P. 46, L. 21-23.] Thus, judgment must be granted in favor of Defendant, and against Plaintiff, as to § 1692d.

    **B.**    **Mandarich did not Violate Section 1692e, e(2)(A) of the FDCPA.**

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such conduct includes "[t]he false representation of—(A) the character, amount, or legal status of any debt. . . ." *Id.* According to Plaintiff, Defendant filed "false claims in the state court complaint," including the contention "that Tran executed a 'Promissory Note' with 'WebBank' and that WebBank's rights under

this 'Promissory Note' were assigned at some point to Velocity." [Compl. ¶ 18.] However, Plaintiff does not dispute agreeing to the Borrower Registration Agreement. [*See* SUF D3; JA Exhibit 26 - Tran Dep., P. 24, L. 25 – P. 26, L. 9.] Plaintiff reviewed the "Promissory Note" as Exhibit A to the Borrower Registration Agreement and knew she was signing up for a loan. [SUF D4; JA Exhibit 26 – Tran Dep., P. 30, L. 15-24.] In fact, during her deposition, Plaintiff testified that she agreed to the Promissory Note electronically. [SUF D5; JA Exhibit 26 – Tran Dep., at P. 33, L. 2-21; P. 34, L. 14-18.] When furnished a copy of the Promissory Note and asked in her deposition whether she remembered agreeing to the terms that are in the promissory note, Plaintiff responded: "[w]ell, yeah. That's how I got the loan. I had to go through this note." [JA Exhibit 26 – Tran Dep., at P. 33, L. 20-21.] Thus, it appears that Plaintiff does not dispute agreeing to the terms of the promissory note. It is her counsel that disagrees with the note's enforceability. Thus, Plaintiff has been unable to point to any misstatement in the state court complaint and thus, her § 1692e claims fail.

Because the Promissory Note is enforceable and because Velocity was the only post-charge off purchaser of Tran's debt, Plaintiff cannot demonstrate a violation of the FDCPA. Even if, for argument's sake, Velocity was not actually the only post-charge off purchaser of the debt, Plaintiff's claims fail for lack of materiality.

In the Ninth Circuit, technically false statements made by the debt collector in a state court complaint are only material if they could have disadvantaged the least sophisticated debtor in responding to the complaint. *Afewerki v. Anaya Law Group*, 868 F.3d 771, 774 (9th Cir. 2017). The true creditor at the time of the lawsuit was still Velocity and Plaintiff still would have been able to avoid the State Court Action in paying the amount owed to Velocity, the proper plaintiff in the action. *See id.* at 777 (discussing importance of consumer's ability to end the

lawsuit by paying the sum sought in the complaint in the context of materiality).
As such, Plaintiff cannot establish a claim based upon this statement even if there
was another purchaser prior to Velocity after charge off.

### C.    Mandarich Did Not Violate Section 1692e(5) of the FDCPA.

Section 1692e(5) only prohibits action that cannot be legally taken; it does
not prohibit potentially valid claims that end up unsuccessful. *Heathman v.
Portfolio Recovery Assocs., LLC*, No. 12-CV-201-IEG (RBB), 2013 U.S. Dist.
LEXIS 27057, at \*10 (S.D. Cal. Feb. 27, 2013). As the U.S. Supreme Court stated
in *Heintz v. Jenkins*, "we do not see how the fact that a lawsuit turns out ultimately
to be unsuccessful could, by itself, make the bringing of it an 'action that cannot
legally be taken.'" *Heintz v. Jenkins*, 514 U.S. 291, 296 (1995). Accordingly, even
if hypothetically, Plaintiff could prove she was not liable for the debt, her
§1692e(5) claim fails under Supreme Court precendent.

### D.    Mandarich Did Not Violate Section §1692f or f(1) of the FDCPA.

Section 1692f, and its subpart f(1), prohibit unconscionable or unfair means,
and specifically, the collection of an amount not expressly authorized by law or the
agreement creating the debt. But, as discussed above, Plaintiff does not
legitimately contest agreeing to the terms of the promissory note. [*See* JA Exhibit
26 - Tran Dep., P. 92 L. 7-22; P. 98, L. 19-P. 99 L. 17.] Moreover, she has no
reason to believe the balance calculated by Prosper is inaccurate. [SUF D35; s*ee*
JA Exhibit 26 - Tran Dep., P. 98, L. 22 – P. 104, L. 4.] She may feel that it is
"unfair" that she has to pay back the full amount of her loan, but that does not
render the collection efforts thereon unconscionable.

### *Defendants' Joint Response*

### A. Plaintiff Has Failed to Meeting Her Burden that the Debt was "Consumer".

The Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* applies only to consumer debts, which are those incurred for personal, family or household purposes. 15 U.S.C. §a(5). Plaintiff, through her declaration, contends that she incurred the debt at issue primarily for personal, family or household purposes. However, her deposition testimony disputes this conclusion. Plaintiff testified that during the relative time period she had an e-bay business selling retail. [JA Exhibit 26 - Tran Dep., P. 20, L. 11- P. 21, L. 11.] Specifically, she testified that she used the account for <u>both</u> business and household purposes and was unable to remember any specifics due to length of time. In fact, Plaintiff's testimony was as follows:

> Q. And what was the--- what did you need the $10,000 for?
>
> A. To pay bills that I was—we were running beyind on.
>
> Q. Okay. What kind of bills? Is it anything related to your business or was it---
>
> A. It was business. It was house. And stuff with my mother. We—she had been on her own for quite some time, and I was helping her out as well. So it wasn't just for me. It was just paying bills and helping out my mother as well.
>
> Q. Okay. Do you have any way and going back specifically and identifying what you used the money for specifically?
>
> A. Truthfully it's been so many year, I don't remember exactly down to the detail.

[JA Exhibit 26 - Tran Dep., P. 26, L. 24 – P. 27, L. 14.] It is Plaintiff's burden to prove that the debt was incurred for personal, family or household purposes. *Wolkow v. Scottsdale Collection Serv., LLC*, 2010 U.S. Dist. LEXIS 103786, at *10 (D. Ariz. Sep. 22, 2010). Here, her testimony indicates that one of the purposes was not consumer, but business, and that she is unable to remember specifically.

Plaintiff cannot, at summary judgment, contradict her sworn deposition testimony without explanation. *See Cleveland v. Policy Management Systems*

*Corp.*, 526 U.S. 795, 806, 119 S. Ct. 1597, 143 L. Ed. 2d 966 (1999)  ("party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity"); *Block v. City of Los Angeles*, 253 F.3d 410 (9th Cir. 2001). For that reason alone her motion must fail as to her FDCPA (and Rosenthal Act) claims.

### B.    The Challenged Representations Were True.

Plaintiff contends that Mandarich violated § 1692(e) and e(2) with three representations. First, Plaintiff argues that Mandarich falsely claimed the existence of a valid promissory note. Second, Plaintiff argues that because the promissory note was not enforceable, Mandarich falsely claimed the right to collect amounts that included fees and interest.[6] Lastly, Plaintiff claims that Prosper, as opposed to another entity, sold Ms. Tran's account to Velocity. Plaintiff is wrong on all three points.

Primarily, Plaintiff's points fail because the promissory note at issue is valid for all the reasons argued in Defendants' affirmative Motion. But in addition, as to the first alleged misrepresentation, Defendant never made any "representation" as to the enforceability of any note. In the state court complaint, Mandarich certainly pled that Plaintiff accepted the terms and conditions of the Account by Defendant. [*See* JA Exhibit 67, ¶ 25.] Plaintiff admits to accepting the terms and conditions of the account, including the interest rate and fees. [*See* JA Exhibit 26 – Tran Dep., P. 30, L. 22 – P. 31, L. 6; P. 33, L. 18-21; P 92, L. 12-22; P. 94, L. 17-22; P 98, L. 19- P. 99, L. 17.] Whether or not the promissory note is enforceable in court because of

---

[6] As to §1692f, Plaintiff claim is essentially the same and fails for the same reasons.

some defense is an entirely different question, which was not even mentioned in the state court complaint.

Moreover, even if the note was somehow unenforceable and there was a misstatement of the amount owed any violation would again be a *bona fide error.* MLG's policy provides that suit may not be filed unless the firm possesses original account level documentation showing the amount due at charge-off, including that reflecting purchase, payment or other actual use by the consumer. [*See* JA Exhibit 62 – Vos Dep., Exhibit 6, Tran00223, MLG Attorney Meaningful Involvement Procedure; JA Exhibit 24 - Vos Dep., P. 36, L. 5 – P. 39, L. 21.] Likewise, MLG relies on Velocity, which as described in its brief, has policies in place designed to prevent collecting more than the amount owed. Further, neither MLG nor Velocity sought more than the creditor stated was owed at charge-off. [JA Exhibit 67, ¶15.]

As to the third point, Mandarich did not falsely state that Prosper sold the debt to Velocity. Prosper, whether on behalf of itself or on behalf of additional seller(s), was indeed the entity that sold Ms. Tran's account to Velocity. [SUF D62.] The Bill of Sale relative to the account demonstrating the sale to Velocity shows Prosper as the entity selling the debt. Further, the Joinder Agreement dated October 3, 2016 gave Prosper the right to do so. There is no valid dispute on that point.

## D.   WHETHER DEFENDANTS VIOLATED THE ROSENTHAL ACT

*Plaintiff's Affirmative Position*

*Defendants are debt collectors*

The Rosenthal Act covers the acts of "debt collectors," defined at California Civil Code §1788.2(c) as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." "Debt Collection," in turn, is defined at California Civil Code §1788.2(c) as "any act or practice in connection with the collection of consumer debts" "Consumer

debts" under the Rosenthal Act are debts that arise based on credit transactions undertaken for "personal, family or household purposes."  California Civil Code §1788.2(e).

Velocity has already admitted that they purchase and then attempt to collect consumer debts incurred for personal, family or household purposes.  [SUF P1, P2 and P3, JA Exhibit 2-Grace Dec, ¶¶7-8, JA Exhibit 3-Recordon Dec, ¶¶14-15, JA Exhibit 10- Plaintiff's Requests for Admission, Nos 3-6, JA Exhibit 11- Defendant Velocity's Responses to RFA's, Nos 3-6].  There is little debate here:  Velocity is a debt collector under the Rosenthal Act.

Mandarich, on the other hand, admitted in their answer that they are debt collectors under the FDCPA, but refused to do so for the Rosenthal Act.  At deposition, however they readily admitted that they regularly litigate debt collection cases against consumer defendants, and the majority of the debts that Mandarich collects are consumer debts in nature.  [SUF P6 and P7, JA Exhibit 24, Vos Depo, page page 8, lines 8-22].

The Rosenthal Act explicitly regulates litigation activity against consumers.

> Moreover, it is apparent that one of the California Legislature's goals in passing the Rosenthal Act was to prevent the use of improper lawsuits to collect on debts. This is evidenced by section 1788.15(a), which prohibits debt collectors from initiating judicial proceedings "when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected," and section 1788.15(b), which applies the same prohibition to wrongly venued proceedings. Cal. Civ. Code § 1788.15.

*Petley v. San Diego Cty. Credit Union*, 2017 WL 385742, at *8 (S.D. Cal. Jan. 27, 2017)

There is little doubt that collection litigation is an "act or practice in connection with the collection of consumer debts" as laid out at California Civil Code §1788.2(c).

*Defendants violated the Rosenthal Act by engaging in acts that violate the FDCPA.*

At Civil Code §17881.7, the Rosenthal Act incorporates large swaths of the FDCPA, including 15 USC 1692e and 1692f, addressed above. Any violation of those provisions such as making a misrepresentation in the collection of a debt, or collecting an amount not authorized by law, violates the Rosenthal Act as well.

> "…the RosenthalAct mimics or incorporates by reference the FDCPA's requirements, including those described above, and makes available the FDCPA's remedies for violations.

*Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)

For the same reason that Mandarich's acts violate the FDCPA, as laid out above, both Defendants' identical acts violate the Rosenthal Act by extension.

### *Defendant's Joint Affirmative Position*

## I.   NEITHER MANDARICH NOR VELOCITY VIOLATED THE ROSENTHAL ACT.

Plaintiff does not allege any acts or conduct that are separate violations of the Rosenthal Act. Instead, Plaintiff simply repeats the alleged violations of the FDCPA into Count II – Violations of the Rosenthal Act. [Compl. ¶ 64 ("Defendants violated Cal. Civ. Code § 1788.17, which incorporates several of the provisions of the FDCPA, including, but not limited to, the following….".)] The conduct outlined in the Complaint that allegedly violated the FDCPA is the exact same conduct at issue in the Rosenthal Act count. [Compl., ¶¶ 47-45 ("Despite the obvious defects with this unsigned "Promissory Note," Defendants chose to sue Tran and falsely claim that they had the right to do so under the 'Promissory Note.' This false representation violates the FDCPA and the Rosenthal Act.") and ¶ 54 ("This false allegation that Velocity is 'the only entity that purchased this

debt after charge off,' or that Velocity even owned the debt alleged, violates the FDBPA, the FDCPA and the Rosenthal Act.").]

Because Plaintiff has failed to demonstrate a violation of the FDCPA, Plaintiff cannot have demonstrated a violation of the Rosenthal Act that is only premised on the underlying FDCPA violations. Specifically, because the Promissory Note is enforceable and because Velocity was the only post-charge off purchaser of Tran's debt, Plaintiff has similarly failed to demonstrate a violation of the Rosenthal Act.

## II. VELOCITY CANNOT BE HELD VICARIOUSLY LIABLE FOR THE ACTS OF ITS INDEPENDENT TRIAL COUNSEL.

Plaintiff seeks to hold Velocity vicariously liable for the actions of its trial counsel, Mandarich. However, there can be no vicarious liability without control. When the principal controls only the results of the work and not the means by which it is accomplished, an independent contractor relationship is established. *White v. Uniroyal, Inc.*, 155 Cal. App. 3d 1, 25, 202 Cal. Rptr. 141 (Cal. Ct. App. 1984) (*overruled on other grounds in Soule v. GM Corp.*, 8 Cal. 4th 548, 34 Cal. Rptr. 2d 607, 882 P. 2d 298 (Cal. Sup. Ct. 1994).

Plaintiff's claim against Velocity for its alleged violation of the Rosenthal Act stems from Velocity's trial counsel, Mandarich, filing a collection lawsuit on Velocity's behalf against Plaintiff in state court. Plaintiff does not dispute that the alleged violation of the Rosenthal Act arises from Mandarich's filing of the state court collection action on Velocity's behalf. However, in California, "independent counsel retained to conduct litigation in the courts act in the capacity of independent contractors, responsible for the results of their conduct and not subject to the control and direction of their employer over the details and manner of their performance." *Merritt v. Reserve Ins. Co.*, 34 Cal. App. 3d 858, 880, 110 Cal. Rptr. 511 (Cal. Ct. App. 1973).

When acting in her capacity as trial counsel—as Mandarich did in this instance—an attorney is an independent contractor pursuant to California law. *Merritt, supra*, 34 Cal. App. 3d at 881 (citing *Otten v. San Francisco Hotel Etc. Assn.*, 74 Cal. App. 2d 341, 343, 168 P.2d 739 (Cal. Ct. App. 1946)); *Associated Indem. Corp. v. Ind. Acc. Com.*, 56 Cal. App. 2d 804, 807—808, 810, 133 P.2d 698 (Cal. Ct. App. 1943). Such conduct is recognized in California as independent conduct outside of an agency relationship because a non-attorney lacks either the knowledge or the capacity to control the litigation decisions or conduct of its trial counsel. *See Merritt, supra*, 34 Cal. App. 3d at 880-81.

By contrast, "[a]n attorney may act as an employee for his employer in carrying out nonlegal functions." *Id.* at 881 (citation omitted). For instance, an attorney "may be the agent of his employer for business transactions." *Id.* (citation omitted). *The distinction between litigation and non-legal/business conduct is key to this Court's vicarious liability inquiry*. Given that Plaintiff does not allege any non-litigation conduct by Mandarich on which she premises her Rosenthal Act claims against Velocity, she cannot maintain her Rosenthal Act cause of action against Velocity through vicarious liability.

Under California substantive law, Velocity cannot be held vicariously liable for the alleged Rosenthal Act violation of its trial counsel.

### ***Plaintiff's Response Regarding the Sub-Topic of Vicarious liability***

Defendant Velocity argues that even though Mandarich is Velocity's agent, Velocity is not liable for Mandarich's acts as attorneys are, according to Velocity, beyond the control of their clients, and therefore independent contractors, and not subject to respondeat superior.

The Ninth Circuit has rejected this notion in the FDCPA context.

> …we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.

*Fox v Citicorp, NA*, 15 F 3d 1507, 1516 (9th Cir 1994)

As the Rosenthal Act incorporates large sections of the FDCPA, many of which are at issue here, the same analysis applies:

> "…the Rosenthal Act mimics or incorporates by reference the FDCPA's requirements, including those described above, and makes available the FDCPA's remedies for violations.

*Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)

As to the FDBPA, as only "debt buyers" like Velocity are subject to its reach, that statute would be rendered meaningless if acts taken through attorneys were not a basis for liability by the debt buyers themselves, particularly with the provisions at issue here, which deal exclusively with disclosures made in litigation. See California Civil Code §§ 1750(a)(1) and 1788.58(a) ("In an action brought by a debt buyer on a consumer debt").

Whatever the merit of Velocity's argument in other contexts, in the context of regulation of debt collection activity, debt buyers like Velocity are clearly subject to vicarious liability for the acts of their agents, who are collecting debts on their behalf.

### ***Defendant Velocity Investments, LLC's Response***

**THE MSJ FAILS TO ALLEGE ANY VIOLATION OF THE ROSENTHAL ACT BY VELOCITY AND FAILS TO ARTICULATE ANY THEORY OF VICARIOUS LIABILITY FOR ANY VIOLATION OF THE FDCPA.**

Plaintiff has alleged three counts in her Complaint: (i) violation of the FDCPA by Mandarich; (ii) violation of the Rosenthal Act by Mandarich and Velocity; and (iii) violation of the FDBPA by Velocity. In her Motion for Summary Judgment, Plaintiff does not allege or outline any violation of the FDCPA by Velocity. Additionally, Plaintiff does not allege that Velocity is vicariously liable for Mandarich's alleged violations of the FDCPA. Then, Plaintiff

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

simply alleges that Defendants have violated the Rosenthal Act because of Mandarich's violation of the FDCPA:

> For the same reason that Mandarich's acts violate the FDCPA, as laid out above, both Defendants' identical acts violate the Rosenthal Act by extension.

[Tran MSJ at P. 51, L. 15-16.] This single statement, is the only support in the entire Motion for Summary Judgment that Defendant Velocity has violated the Rosenthal Act. Because Plaintiff has failed to affirmatively demonstrate or even articulate a (i) a violation of the FDCPA by Velocity; (ii) that Velocity is vicariously liable for Mandarich's alleged violation of the FDCPA; and (iii) a violation of the Rosenthal Act by Velocity, Plaintiff has in no way met her burden and Count II should be dismissed as to Velocity.

## E.     WHETHER VELOCITY VIOLATED THE FDBPA

### *Plaintiff's Affirmative Position*

Velocity has already admitted that they are "debt buyers" subject to the FDBPA.  [SUF P1, P2 and P3, JA Exhibit 2-Grace Dec, ¶¶7-8, JA Exhibit 3-Recordon Dec, ¶¶14-15, JA Exhibit 10- Plaintiff's Requests for Admission, Nos 3-6, JA Exhibit 11- Defendant Velocity's Responses to RFA's, Nos 3-6].

At California Civil Code §1788.58(6), the FDBPA requires that Velocity include in their state court pleadings the " name and an address of the charge-off creditor at the time of charge off and the charge-off creditor's account number associated with the debt. "

Velocity did not do either of these things.  Velocity claimed that Prosper was the charge off creditor, but as Prosper themselves testified, they sold Ms. Tran's loan almost immediately after it was issued, and well before any delinquency.  ."  [SFU 48, JA Exhibit 23, Cassidy Depo, page 27, line 2 to page 29, line 18, page 43, line 22 to page 44, line 16, page 52, line 21 to page 53, line 25 and page 118,

line 15 to page 123, line 22 and JA Exhibit 49, -"Prosper Support" (Loan #362366) Ex 36 to *Deposition of Michael J. Cassidy*].

Velocity does not claim to be the charge off creditor, which means we are left to guess, and that lack of disclosure in the State Court Complaint violates the FDBPA. It is likely, as argued above, that the charge off creditor is SVTW, LP, but it really does not matter. The charge off creditor is not Prosper, and we do not have a clear disclosure of the identity of the charge off creditor and the account number they used. This is a simple issue, and one that should have settled some time ago. Velocity clearly violated the FDBPA, and Plaintiff is entitled to summary judgment on this issue.

### ***Defendants' Joint Affirmative Position***

**VELOCITY DID NOT VIOLATE THE FDBPA.**

Throughout the Complaint, Plaintiff only asserts one alleged violation of the FDBPA by Velocity: "This false allegation that Velocity is 'the only entity that purchased this debt after charge off,' or that Velocity even owned the debt alleged, violates the FDBPA, the FDCPA and the Rosenthal Act." [Compl., ¶ 54.] As already discussed in detail in Section II.A.i. *infra*, the statement the Velocity was the only post-charge off purchaser is correct, is not false, and therefore, is not a violation of the FDCPA, the Rosenthal Act, or the FDBPA.

Specifically, the California FDBPA requires that in an action brought by a debt buyer on a consumer debt, the complaint must allege: "The names and addresses of all persons or entities that purchased the debt after charge off, including the plaintiff debt buyer. The names and addresses shall be in sufficient form so as to reasonably identify each such purchaser." Cal. Civ. Code § 1788.58(a)(8). Velocity is the only post charge-off purchaser of Tran's debt. [JA Exhibit 6 – J. Goldston Decl., ¶ 22.] The State Court Complaint identifies Velocity

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

1    as the post-charge off purchaser. [JA Exhibit 67, ¶ 2.] Therefore, Velocity has not

2    violated the FDBPA.

3         To the extent that Plaintiff may now attempt to argue allegations not

4    contained in the Complaint, and allege that the State Court Complaint somehow

5    contains other violations of FDBPA, any such argument is not permissible because

6    it was not asserted in the Complaint. *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp.

7    3d 1048, 1063 (N.D. Cal. 2014) ("As the Ninth Circuit has repeatedly held,

8    'summary judgment is not a procedural second chance to flesh out inadequate

9    pleadings.' [Plaintiff] may not 'effectively amend [her] Complaint by raising a new

10   theory ... in response to a motion for summary judgment.'" (citing *Wasco Prods.,*

11   *Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir.2006) (internal citations

12   and quotation marks omitted))).

13        Significantly, Section 1788.62(g) of the FDBPA makes clear that a party

14   may not recover under the FDCPA or the Rosenthal Act and also recover pursuant

15   to the FDBPA: "Recovery in an action brought under the Rosenthal Fair Debt

16   Collection Practices Act (Title 1.6C (commencing with Section 1788)) or the

17   federal Fair Debt Collection Practices Act (15 U.S.C. Sec. 1692 et seq.) ***shall***

18   ***preclude recovery for the same acts in an action brought under this title***." Cal.

19   Civ. Code § 1788.62(g) (emphasis added). Plaintiff asserts the same alleged

20   misstatement—that Velocity was not the only post-charge off purchaser—as the

21   foundation to the FDCPA, Rosenthal Act, and FDBPA claim. Because that

22   statement is true, each of these claims fails. Yet, even if Plaintiff somehow prevails

23   on either Count I or Count II, Plaintiff is legally precluded from recovering on

24   Count III.

25

26

27

There is a dearth of case law addressing the California FDBPA.[7] To the extent that any alleged misrepresentations pursuant to the FDBPA must be material, Defendants reiterate the materiality argument made in Section III. B., *infra* at p. 18.

In the Ninth Circuit, technically false statements made by the debt collector in a state court complaint are only material if they could have disadvantaged the least sophisticated debtor in responding to the complaint. *Afewerki*, 868 F.3d at 774. Here, Velocity was the only post-charge off purchaser. Additionally, Prosper remained the servicer of Tran's loan from origination of the loan to the sale to Velocity. [JA Exhibit 6 – J. Goldston Decl., ¶ 13.] Therefore, any omissions in the State Court Complaint regarding other creditors are immaterial, and in no way prevented Plaintiff from knowing who she owed the debt to, or how to pay the debt and avoid the State Court action.

### *Defendant Velocity Investments, LLC's Response*

**PLAINTIFF HAS FAILED TO DEMONSTRATE THAT VELOCITY HAS VIOLATED THE FDBPA.**

Throughout the Complaint, Plaintiff only asserts one alleged violation of the FDBPA by Velocity: "This false allegation that Velocity is 'the only entity that purchased this debt after charge off,' or that Velocity even owned the debt alleged, violates the FDBPA, the FDCPA and the Rosenthal Act." [Compl., ¶ 54.] As discussed in detail in Defendants' Motion for Summary Judgment, the statement that Velocity was the only post-charge off purchaser is correct, is not false, and therefore, is not a violation of the FDBPA.

---

[7] A review of the case law on Westlaw demonstrates that there is a total of ten cases that are "Citing References" for Cal. Civ. Code § 1788.50 *et seq*. and only one case that cites directly to § 1788.58, the section that Plaintiff contends Velocity violated.

### A.   Plaintiff Is Procedurally Precluded from Asserting a New Theory of Liability under the FDBPA.

Plaintiff now, for the first time, argues in her Motion for Summary Judgment a new theory regarding the FDBPA violation. Instead of focusing on the fact that Velocity was the only post-charge off purchaser, Plaintiff now alleges that Defendant Velocity violated the FDBPA by failing to identify the correct charge off-creditor: "At California Civil Code §1788.58(6), the FDBPA requires that Velocity include in their state court pleadings the "name and an address of the charge-off creditor at the time of charge off and the charge-off creditor's account number associated with the debt." [Tran's MSJ at P. 54, L. 1-4.] *If, based on discovery, Plaintiff wanted to allege a new theory of liability for Count III, she had until March 22, 2019 to move to amend her Complaint.* Plaintiff failed to amend the Complaint, despite the fact that her theory has apparently changed, and because of that, Plaintiff is precluded from brining this argument.

To the extent that Plaintiff is now attempting to argue allegations not contained in the Complaint, any such argument is not permissible because it was not asserted in the Complaint. *Newton v. Am. Debt Servs., Inc.*, 75 F. Supp. 3d 1048, 1063 (N.D. Cal. 2014) ("As the Ninth Circuit has repeatedly held, 'summary judgment is not a procedural second chance to flesh out inadequate pleadings.' [Plaintiff] may not 'effectively amend [her] Complaint by raising a new theory ... in response to a motion for summary judgment.'" (citing *Wasco Prods., Inc. v. Southwall Techs., Inc.,* 435 F.3d 989, 992 (9th Cir.2006) (internal citations and quotation marks omitted))). Because the only theory of violation of the FDBPA included in the Complaint was that Velocity was not the only post-charge off purchaser, Plaintiff is now precluded from arguing a new and distinct violation of a separate section of the FDBPA because she chose not the amend her Complaint.

### B.   Any Liability for Any Alleged Violation of the FDBPA is Precluded by The Bona Fide Error Defense.

Even if the court does permit Plaintiff's new theory of liability for an FDBPA violation, any liability for the alleged violation, including the alleged failure to identify the charge-off-creditor, is precluded by the bona fide error defense.

        1.    <u>Plaintiff Fails to Substantiate Her Position that Velocity is not Entitled to the Bona Fide Error Defense with any Meaningful Argument or Legal Authority</u>.

First and foremost, Plaintiff has failed to meet her burden of proof on the argument that Velocity is not entitled to a complete defense under the bona fide error doctrine, as her affirmative argument advances no argument and cites no legal authority to support her position.  Plaintiff's affirmative argument fails to argue, for instance, why Velocity's alleged failure to discover the identity of the seller of Plaintiff's loan was not an error in good faith, or why Plaintiff's policies and procedures, which are aimed at avoiding exactly such error, do not protect it from liability under the FDBPA.

Instead, Plaintiff's entire argument, however incomprehensibly articulated, seems to be premised on an immaterial misstatement, as discussed below. However, Plaintiff has presented no affirmative argument on the bona fide error defense, and, as such, has failed to meet her burden on that argument.

        2.    <u>Plaintiff Misinforms This Court Regarding the Identification of SVTW, LP in the Loan Sale Documents</u>.

Not only does Plaintiff fail to put forth a meaningful legal argument that Velocity is not entitled to a complete defense under the bona fide error doctrine, her unsubstantiated argument is also based on a *false premise*.  Plaintiff argues that "the name 'SVTW, LP' appears as a 'seller' on the Bill of Sale under which Velocity Investments, Inc claims to have purchased Ms. Tran's account." [Tran MSJ at P. 9, L. 18-19; P. 35, L. 7-8.] *This is simply not true*.  The Bill of Sale, a

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

1   one-page document under which Velocity purchased Plaintiff's account, identifies

2   no sellers other than Prosper. [JA Exhibit 25 – M. DiPoalo Dep., P. 18, L. 21 – P.

3   19, L. 12.] Furthermore, Velocity has testified that, based on the Bill of Sale, it

4   believed Prosper to be the seller of Plaintiff's loan. [JA Exhibit 25 – M. DiPoalo

5   Dep., P. 23, L. 23 – P. 24, L. 8; P. 26, L. 19-22.]

6          It is shocking that Plaintiff misleads this Court regarding the identification of

7   SVTW, LP by the Bill of Sale; such a material misrepresentation, upon which

8   Plaintiff premises an entire argument, should not be tolerated. The evidence

9   propounded by Plaintiff demonstrates that Velocity received no documents from

10  the purchase of Plaintiff's loan which identify any entity other than Prosper as the

11  seller.

12              3.    <u>This Factual Scenario is the Reason the Legislature Enacted the</u>

13                  <u>Bona Fide Error Provisions</u>.

14         The bona fide error defense has been legislatively enacted to apply to each

15  of Plaintiff's alleged statutory violations to prevent liability for debt collectors

16  resulting from exactly the kind of error which occurred here. The uncontroverted

17  facts establish that any alleged violation of any consumer statute by Velocity

18  occurred ***despite*** it enacting various policies and procedures to ensure that it does

19  not pursue, or cause to be pursued, any debt to which it is not entitled, that it

20  possesses all account documentation regarding the balance and ownership of any

21  debt it pursues, and that communication by or on behalf of Velocity do not contain

22  any false or unfair representations.

23         The uncontroverted facts further establish that Velocity did not know the

24  identity of any seller of Plaintiff's loan other than Prosper. None of the loan-

25  related documents received by Velocity from Prosper identify any seller other than

26  Prosper. [JA Exhibit 5 – L. Svenson Decl., ¶ 18.] As such, Velocity has no reason

27

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

1
2
to disbelieve that Prosper was the seller of Plaintiff's loan.   [JA Exhibit 5 – Svenson Decl., ¶ 18.]

3
4
5
6
The California Legislature, recognizing that it would be unfair to hold an alleged debt collector liable for an unintentional mistake which occurred despite the enactment of reasonable procedures to avoid such a mistake, codified the bona fide error defense.

7
8
4.      Documents Produced by SVTW Are Not Relevant to this Court's Inquiry Regarding the Bona Fide Error Defense.

9
10
11
12
13
14
15
16
The first prong of the bona fide error defense requires an inquiry into the Velocity's state of mind.   Logically, information which was not in Velocity's possession at the time it purchased Plaintiff's loan or at the time it pursued legal action against Plaintiff, but which was produced as part of discovery to Plaintiff I this litigation, did not and could not have impacted Velocity's state of mind. Because she cannot impute SVTW's knowledge to Velocity, Plaintiff may not rely on documents produced by SVTW in response to a subpoena in this action to show Velocity's state of mind.

17
18
19
20
Because Plaintiff puts forth no compelling argument as to why this Court should rule in a manner inconsistent with the purpose of the bona fide error defense, this Court should find that Velocity is entitled to a complete defense under the bona fide error doctrine.

21
**F.      BONA FIDE ERROR DEFENSE**

22
***Defendants' Joint Affirmative Position***

23
24
25
26
27
A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. 15 U.S.C. § 1692k(c).

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

The Rosenthal Act includes a near-identical provision, stating that "[a] debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation." Cal. Civ. Code § 1788.30(e).

Similarly, "[a] debt buyer shall have no civil liability under [the FDBPA] if the debt buyer shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error, and occurred notwithstanding the maintenance of procedures reasonably adopted to avoid any error." Cal. Civ. Code § 1788.62(e).

"The bona fide error defense is an affirmative defense, for which the debt collector has the burden of proof." *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1006 (9th Cir. 2008) (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994)). Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation. *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011).

"Logically, if a debt collector reasonable relies on the debt reported by the creditor, the debt collector will not be liable for any errors. On the other hand, the bona fide error defense will not shield a debt collector whose reliance on the creditor's representation is unreasonable or who represents to the consumer a debt amount that is different from the creditor's report." *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006). A debt collector who "reasonably relies" on a reported debt has "procedures designed to avoid discoverable errors, including, but not limited to, errors in calculation and

itemization." *Reichert*, 531 F.3d at 1007. The Ninth Circuit uses a two-step process to determine whether the "procedures" prong has been satisfied. *Id.* First, the debt collector must maintain procedures to avoid errors. *Id.* Second, the procedures must be "reasonably adapted to avoid the *specific error* at issue." *Id.* Therefore, a defendant must assert and explain how a procedure or policy is tailored to avoid the specific mistake at issue in order to take advantage of the bona fide error defense. *Well v. Ray Klein, Inc.*, 2019 U.S. Dist. LEXIS 66310, at *13 (D. Or. Feb. 1, 2019).

### A.   Any Alleged Violation Was Unintentional.

Plaintiff alleges that Mandarich violated consumer protection statutes by filing of a collection complaint on behalf of its client, Velocity, containing two false statements: (i) that there was a valid Promissory Note; and (ii) that Velocity is the only purchaser of the debt post-charge off.  As demonstrated above, neither of these statements is false, and, as such, cannot be the basis of Plaintiff's alleged violations.

Nevertheless, to the extent that this Court finds some conduct by Defendants may have violated either the FDCPA, the Rosenthal Act, or the FDBPA – for instance as a result of the failure to discover an additional seller -  such conduct was unintentional. [JA Exhibit 5 – L. Svenson Decl., ¶¶ 17-20.]  Velocity purchased the Loan from Prosper Funding LLC. [SUF D62; JA Exhibit 5 – L. Svenson Decl., ¶ 18.]  The Bill of Sale of the Loan to Velocity identifies Prosper as a seller. [*See* JA Exhibit 50.]  Velocity received all Loan-related records from Prosper.  [SUF D63; JA Exhibit 5 – L. Svenson Decl., ¶ 18.] As such, Velocity believed Prosper to be the seller of the Loan. [SUF D64; JA Exhibit 5 – L. Svenson Decl., ¶ 18.]

Furthermore, any failure of Velocity to discover the existence of an additional seller or sellers in the chain of title was unintentional and good faith.

1   [SUF D65; JA Exhibit 5 – L. Svenson Decl., ¶ 19.] Had Velocity discovered the
2   identity of an additional seller of the Loan, it would have updated its records to
3   reflect the seller's identity and sought the missing chain of title documents from
4   Prosper. [SUF D66; JA Exhibit 5 – L. Svenson Decl., ¶ 20.]
5       That the alleged errors, if any, were unintentional is further evidenced
6   Velocity's detailed policies, procedures and practices, which are intended to avoid
7   the alleged errors.

8   **B.   The Alleged Violation Occurred Despite the Maintenance of Policies and Procedures.**

10      Velocity maintains policies, procedures and practices with the intent to
11  ensure that none of its business activities are unfair or result in a violation of
12  governing law. [SUF D36; JA Exhibit 5 – L. Svenson Decl., ¶ 4.] Specifically,
13  Velocity has created and instituted policies and procedures to ensure the following:
14  that Velocity does not pursue, or cause to be pursued, any debt to which Velocity is
15  not entitled; that Velocity possesses all account documentation regarding the
16  balance and ownership of any debt it pursues; and that communication by or on
17  behalf of Velocity do not contain any false or unfair representations. [SUF D37; JA
18  Exhibit 5 – L. Svenson Decl., ¶ 4.]

19      ***i.   Velocity's Policies and Procedures Regarding Initial File Import and Review***

21      Velocity seeks to ensure meaningful review and quality control. Pursuant to
22  Velocity's initial file review policy, each and every file that is opened is reviewed
23  by two parties, a Velocity analyst and then a servicing manager. [SUF D39; JA
24  Exhibit 5 – L. Svenson Decl., ¶ 6.] Velocity's initial review consists of checking
25  the type of account, interest rate being charged, statute of limitations, consumer's
26  address, bankruptcy, litigant alert, military and death search through NACN,
27  WEBRECON litigant alert, media if available at the time of opening and the

balance due on each file. [SUF D40; JA Exhibit 5 – L. Svenson Decl., ¶ 6.] One purpose, among others, of this review policy is for Velocity to immediately identify inaccuracies, inconsistencies, contest, or other condition which would render Velocity's business practice relative to the file unfair or unlawful. [SUF D41; JA Exhibit 5 – L. Svenson Decl., ¶ 6.]

A file will fail initial review if it is outside the applicable statute of limitations, the interest rate is usury, media is not proper, the file type is one which is not acceptable to Velocity, has an out of state address, the balance is incorrect or incalculable, or if the balance size is not within Velocity's parameters. [SUF D42; JA Exhibit 5 – L. Svenson Decl., ¶ 7.] Per the policy, "[i]f a file fails this initial review, the file is returned to the client without any further action by Velocity towards the consumer." [SUF D43; JA Exhibit 5 – L. Svenson Decl., ¶ 7.] One purpose, among others, of this review policy is to immediately identify those accounts for which Velocity does not have Velocity-required and/or statutorily-mandated records and/or an, based on said documents, an entitlement to collect. [SUF D44; JA Exhibit 5 – L. Svenson Decl., ¶ 7.]

To accompany this policy and to give it practical weight, Velocity has instituted a File Import Procedure, which requires an aforementioned analyst to import all final sale files from the seller into a commercial legal software (hereinafter "CLS") system, and to reformat column headers and data fields so they are recognizable by the CLS. [SUF D57; JA Exhibit 5 – L. Svenson Decl., ¶14.] The File Import Procedure requires a "reasonableness check to confirm that the data loaded into CLS is correct." [SUF D58; JA Exhibit 5 – L. Svenson Decl., ¶14.] Through this procedure, Velocity seeks to ensure the accuracy and tracking of all account information. [SUF D59; JA Exhibit 5 – L. Svenson Decl., ¶14.]

### ii.   Velocity's Policies and Procedures Regarding Litigation Review and Practices

Velocity prohibits the purchase of accounts "where there is no availability of original account level documentation." [SUF D45; JA Exhibit 5 – L. Svenson Decl., ¶13.] Furthermore, "Velocity maintains a 50 state matrix of documents that are required in each jurisdiction, and uses this matrix to determine whether an account is suit eligible based on available documentation." [SUF D46; JA Exhibit 5 – L. Svenson Decl., ¶13.] This policy is designed to allow Velocity to conduct a "pre-suit assessment on the availability of evidence/documentation for suit prior to referring any account to pre-legal agencies or law firms in its legal network." [SUF D47; JA Exhibit 5 – L. Svenson Decl., ¶13.] The purpose of this policy is to ensure that Velocity "pre-litigation and litigation practices preclude any use of unconscionable, false, deceptive, or misleading means." [SUF D48; JA Exhibit 5 – L. Svenson Decl., ¶13.]

Velocity's practice of maintaining a matrix of documents required by California to determine an account's eligibility for suit in this state establishes that it is cognizant of its numerous statutory obligations, committed to abiding by said obligations, and, as such, has instituted policies, procedures, and practices to ensure statutory compliance.

This policy procedurally prohibits Velocity from initiating litigation against an obligor to collect an account unless it determines that all of the following conditions are met:

a.   Velocity has the following information in its possession to support Velocity's pleadings in litigation:

(1) original account level documentation reflecting, at a minimum,

(i) the obligor's name,

(ii) the last four digits of the account number associated with the debt at the time of charge off,

(iii) the outstanding amount (excluding any post charge-off payments);

(2) a complete chain of title of all prior owners of debt, including a certified or properly authenticated bill of sale evidencing transfer of ownership, including a reference to the specific debt being collected upon; and

(3) Either

(i) a document signed by the obligor evidencing the opening of the account or

(ii) last pay statement or other statement reflecting actual use by the obligor.

[SUF D49; JA Exhibit 5 – L. Svenson Decl., ¶ 9.]

### iii. *Velocity Maintains Policies and Procedures Regarding Attorney Conduct and Practices, Including Statutory Compliance and Related Training*

Moreover, Velocity relies on its trial counsel to make an independent determination pertaining to the legal propriety of filing an action. Velocity's Litigation Practices Policy requires a licensed attorney's meaningful review of an account upon receipt for action. [SUF D50; JA Exhibit 5 – L. Svenson Decl., ¶ 10.] It is Velocity's explicit requirement that "[a]ttorneys … retain further on the ground decision making authority on whether to place an account in suit that Velocity has referred for litigation." [SUF D51; JA Exhibit 5 – L. Svenson Decl., ¶ 10.] This policy furthers Velocity's efforts to maintain fair and reasonable litigation practices. [JA Exhibit 5 – L. Svenson Decl., ¶ 10.]

Velocity's policy institutes a procedural prohibition for attorneys against "initiat[ing] a legal collection lawsuit unless in possession of information including, but not limited to, the following: original account-level documentation; a chronological listing of the names of all prior owners of the debt and the date of each transfer of ownership of the debt, beginning with the name of the creditor at the time of charge-off; a certified or otherwise properly authenticated copy of each bill of sale or other document evidencing the transfer of ownership of the debt,

1  including a specific reference to the particular debt being collected upon, at the
2  time of charge-off to each successive owner, including Velocity." [SUF D52; JA
3  Exhibit 5 – L. Svenson Decl., ¶ 11.]

4      To promote attorney compliance with Velocity's values and guidelines,
5  Velocity has adopted a Vendor Management Policy, according to which Velocity
6  tests and reviews at least annually the following non-exclusive operational areas of
7  its vendors: licensing; complaints; FDCPA compliance; training and testing;
8  attorney review, performance review, information security. [SUF D53; JA Exhibit
9  5 - L. Svenson Decl., ¶ 12.] According to this policy, Velocity outsources the legal
10 collection process of receivable portfolios to third party law firms based on
11 specific guidelines established by senior management. [SUF D54; JA Exhibit 5 - L.
12 Svenson Decl., ¶ 12.] The purpose of these policies is to facilitate and ensure legal
13 compliance as well as the requisite independent review and decision making by a
14 licensed attorney.  [SUF D55; JA Exhibit 5 - L. Svenson Decl., ¶ 12.]

### C.  The Policies and Procedures are Reasonably Adapted to Avoid the Alleged Violations.

15
16
17     The state court complained filed on behalf of Velocity contained no false
18 statements, as demonstrated above, because there was a valid Promissory Note and
19 Velocity is the only purchaser of the debt post-charge off.

20     Assuming, *arguendo*, that Plaintiff has shown that Velocity has, in fact,
21 violated some provision of the FDCPA, the Rosenthal Act, or the FDBPA,
22 Velocity is entitled to a complete defense of *bona fide* error because, as
23 demonstrated, the violation(s) were unintentional and in good faith, and occurred
24 despite the maintenance of policies and procedures reasonably adapted by Velocity
25 by avoid such violation(s).

26     For instance, Plaintiff as demonstrated above, Velocity maintains policies
27 and specified procedures regarding the transfer of account documents, including

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

1  multi-level document review utilizing checklists, including a mandated comparison

2  of Velocity's information against seller-provided information, to avoid pursuing

3  debts to which it may not be entitled and/or against persons who are not the

4  obligated by the debt. [SUF D60; JA Exhibit 5 – L. Svenson Decl., ¶ 15.]

5      Velocity maintains policies and specified procedures pertaining to

6  confirmation that Velocity is in possession of account ownership documents to

7  secure its compliance with various laws which govern Velocity's business activity,

8  including, but not limited to, California's Rosenthal Act and the Fair Debt Buying

9  Practices Act.  [SUF D61; JA Exhibit 5 – L. Svenson Decl., ¶ 16.]

10 ***Plaintiff's Response***

11     Defendant Velocity goes to great lengths to argue that they are free to violate

12 the Rosenthal Act and the FDBPA because their policies and procedures insulate

13 them from liability.

14     Velocity is not entitled to rely upon this defense for three reasons.

15     The first is that, as to their prosecution of claims based on the Borrower

16 Promissory Note, Velocity's error was not factual in nature, but legal.

17     Velocity themselves claim that they had access to the Borrower Registration

18 Agreement and Limited Power of Attorney," as well as the "Borrower Promissory

19 Note." [SUF D63, "Velocity received all Loan-related records from Prosper."].

20 Velocity was not confused about the fact that Ms. Tran did not sign the "Borrower

21 Promissory Note:  they knew the facts, and simply decided to proceed anyway.

22 This is an error of law at best.

23     In the context of the FDCPA, the Ninth Circuit has long held that errors of

24 law are not a basis for the bona fide error defense.

25         Reliance on advice of counsel or a mistake about the law
26         is insufficient by itself to raise the bona fide error
           defense.

27

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

*Baker v G.C. Services Corp*, 677 F 2d 775, 779 (9th Cir., 1982)

There is little reason not to apply this rule to the Rosenthal Act as well, as the Rosenthal Act mimics this portion of the FDCPA.

Even were this not the case, however, Velocity would not be able to rely upon this defense as to Plaintiff's "power of attorney" issue. The reason is simple: *Velocity is still prosecuting their false and inflated claims*. [SUF P58, JA Exhibit 2-Grace Dec, ¶4]. Velocity has been aware of the issues with their claims and the unenforceable "power of attorney" clause they rely upon, and instead of stopping, they simply kept going. This is intentional behavior, and is no "bona fide" error.

Velocity failed to disclose the true identity of the "charge-off creditor" for the account at issue, violating California Civil Code §1788.58(a)(6), cited at paragraph 68 of Plaintiff's Complaint. Velocity now claims this was a mere oversight, and that their policies and procedures anticipate this and prevent these errors.

This is simply not true.

Velocity Investments, LLC, who regularly files lawsuits with Mandarich Law Group, LLP on debts that were originated through Prosper Funding, LLC and WebBank is in a position to know that *all* of the debts issued by WebBank though Prosper Funding, LLC's platform are sold to third party "investors," and that Prosper Funding, LLC does not own these debts at the time of charge-off, or at the time they are sold by third party investors to debt buyers such as Velocity Investments, LLC. [SUF P9, Exhibit 24-Deposition of Ryan Vos, page 26, line 13 to page 27, line 20, SUF 18-20, Exhibit 23-Deposition of Michael J. Cassidy, page 27, line 2 to page 29, line 18 and page 52, line 21 to page 53, line 25]

The name "SVTW, LP" appears as a "seller" on the Bill of Sale under which Velocity Investments, Inc claims to have purchased Ms. Tran's account. [SUF P50, Exhibit 50-"Bill of Sale" (Bates stamp number VEL 000067, Ex 5 to *Deposition of*

1   *Matthew DiPaolo*) and Exhibit 25-Deposition of Matthew DiPaolo, page 18, lines

2   13-24 and page 26, line 25 to page 28, line 9]

3   On April 11, 2019, SVTW, LP was identified by Velocity Investments, LLC as a

4   party with knowledge regarding Ms. Tran's account in discovery. [SUF P51,

5   Exhibit 12-Plaintiff's Interrogatories to Defendant Velocity Investments, LLC, Set

6   One, Interrogatory 1, and Exhibit 2-Declaration of Scott M. Grace in Support of

7   Plaintiff's Motion for Partial Summary Judgment, ¶¶7-8, Exhibit 13-Defendant

8   Velocity Investments, LLC's April 11, 2019 Responses to Plaintiff's

9   Interrogatories, Interrogatory 1, Exhibit 3-Declaration of Stephen G. Recordon in

10  Support of Plaintiff's Motion for Partial Summary Judgment, ¶¶18-19]

11  Yet on July 26, 2019, Velocity Investments, LLC's designated witness claimed to

12  have no knowledge of SVTW, LP, and did not know who owned Ms. Tran's

13  account at the time it was sold to Velocity Investments, LLC [SUF P52, Exhibit

14  25-Deposition of Matthew DiPaolo, page 28, lines 17 to page 29, line 7]

15        Now, after the close of discovery, Velocity has admitted that they purchased

16  the debt from SVTW, LP, but claims that is all some kind of innocent mistake.

17  Apparently one has to sue Velocity before they will take a look at the chain of title

18  to the debts they purchase.  That does not meet the standard set out by the Ninth

19  Circuit:

20             A debt collector is not entitled under the FDCPA to sit
21        back and wait until a creditor makes a mistake and then
           institute procedures to prevent a recurrence.  [*text
22        omitted*]   If the bona fide error defense is to have any
           meaning in the context of a strict liability statute, then a
23        showing of "procedures reasonably adapted to avoid any
           such error" must require more than a mere assertion to
24        that effect.   The procedures themselves must be
           explained, along with the manner in which they were
25        adapted to avoid the error.   See Wilhelm, 519 F.3d at
26        421.   Only then is the mistake entitled to be treated as
27

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

> one made in good faith.   Because NCS submitted only a conclusory declaration stating that it maintained procedures, we hold that it failed to establish a bona fide error defense under the FDCPA.

*Reichert v Nat'l Credit Systems, Inc*, 531, F 3d 1002, 1007 (9th Cir., 2008)

There is no principled reason to treat Rosenthal Act claims differently, and Velocity's conclusory claims of policies and procedures to avoid hiding the chain of title to their debts is belied by their actions over the course of this litigation.

Velocity cannot meet their burden as to the bona fide error on either of Plaintiff's claims.

## VI.   CONCLUSION

### *Plaintiff's Conclusion*

Both Defendants to this action have, as shown above, violated both federal and California statutes regarding their failure to disclose the true charge-off creditor for the account at issue, and their repeated and continuing prosecution of an unenforceable contract, along with fees and interest they are not entitled to collect.   Neither party has established any defense to these claims, and this Court should enter an order finding that Defendants have violated all three of the statutes at issue, and then allow Plaintiff to choose which remedy to bring to trial, as Plaintiff can only recover for either FDBPA or the FDCPA and the Rosenthal Act, as Defendants correctly noted.

### *Defendants' Joint Conclusion*

Based on the foregoing arguments, the pleadings in this action, the evidence presented herewith, and the governing law, Defendants Mandarich and Velocity request this Court grant their respective Motions for Summary Judgment, for costs of suit, and any other relief this Honorable Court deems just. Defendants Mandarich and Velocity further request that this Court deny Plaintiff's Motion for Partial Summary Judgment.

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment  18-cv-02257-FMO-SHK

1

2       Respectfully submitted;

3

4    Dated: October 31, 2019              /s/ Stephen G. Recordon

5                                         Stephen G. Recordon
                                          Attorney for Plaintiff
6

7    Dated: October 31, 2019              /s/ Molshree Gupta

8                                         Molshree Gupta
                                          Attorney for Defendant
9                                         Velocity Investments, LLC

10   Dated: October 31, 2019              /s/ Dara Chevlin Tarkowski

11                                        Dara Chevlin Tarkowski
                                          Attorney for Defendant
12                                        Velocity Investments, LLC

13

14   Dated: October 31, 2019              /s/ Nicole M. Strickler

15                                        Nicole M. Strickler
                                          Attorney for Defendant
16                                        Mandarich Law Group, LLP

17

18

19                  **Signature Certification**

20   I hereby certify that the content of this document is acceptable to Molshree Gupta,

21   Dara Chevlin Tarkowski, both counsel for Defendant Velocity Investments, LLC
     and Nicole M. Strickler, counsel for Mandarich Law Group, LLP, and that I have
22   obtained Ms. Gupta, Ms. Chevlin Tarkowski and Ms. Strickler's authorization to

23   affix their respective electronic signatures to this document.

24   Dated: October 31, 2019              /s/ Stephen G. Recordon

25                                        Stephen G. Recordon
                                          Attorney for Plaintiff
26

27

Joint Points and Authorities Regarding the Parties' Cross-Motions for Summary Judgment   18-cv-02257-FMO-SHK